**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **TERRY SCOTT CASKEY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No. C2-20-cv-1549** |
| **v.** | : | |
| | : | **Chief Judge Algenon L. Marbley** |
| **NATHAN FENTON, et al.,** | : | |
| | : | **Magistrate Judge Jolson** |
| **Defendants.** | : | |

**<u>OPINION AND ORDER</u>**

This matter is before this Court on several of the parties' Motions, chief among these being their Motions for Summary Judgment. (ECF Nos. 57, 58). For the following reasons, Plaintiff's Motion is **DENIED**, while Defendants' Motion is **GRANTED in part and DENIED in part**.

Before this Court evaluates these dispositive motions, it must first resolve several other pending motions. These include Plaintiff's Motion to Exclude Officer Cornute from Offering Expert Testimony (ECF No. 40), Defendants' Motion in Limine to bar Jim Shively's affidavit, photographs, and testimony (ECF No. 67), as well as Plaintiff's Motions to Supplement the Record (ECF No. 73) and for Leave to File Sur-reply (ECF No. 78), and Defendants' Motion to Strike or for Leave to File Sur-reply (ECF No. 81).

## I.  BACKGROUND

### A.  Factual Background

On the evening of November 11, 2018, Defendant Officers Fenton and Harshbarger were on patrol in the 8th precinct of Columbus, in Prisoner Transport Vehicle #88 ("PTV 88"). (ECF No. 55-1 at 4). Officer Harshbarger was driving, and Officer Fenton was in the passenger seat. (*Id.*). At approximately 7:15pm, while traveling southbound on Dana Avenue, Defendant Officers

observed a blue 2009 Nissan Altima, license plate HDU2365, stopping at the intersection ahead of them at Dana and Union Ave. (ECF No. 12 at ¶ 6 (citing ECF No. 57-1 at 2–3)). While the vehicle was slowing to a stop, the Officers noticed that only one of its break lights was working. (ECF No. 57-1 at 2). After the driver turned "quickly" westbound on Union Ave without signaling, the Officers "initiated their lights and audible siren . . . in order conduct a traffic stop for the traffic violations" of Columbus City Code ("C.C.C.") § 2131.14, Failing to Signal, and C.C.C. § 2137.24, Motor Vehicle Lights. (*Id.*).

The Officers reported the vehicle then turned "northbound onto S. Central Ave and [] quickly accelerate[d] into the furthest left-hand lane of vehicles traveling southbound on S. Central Ave. in order to flee . . . ." (*Id.*). Defendant Officers contend this act "caused a substantial risk of physical harm to anyone traveling southbound on S. Central Ave. and to property in the furthest left-hand lane . . . ."[1] (*Id.*). As the vehicle was turning southbound, the Officers represent they were able to identify the driver as "an older male, white, short hair and medium build." (*Id.*). The vehicle then took off "northbound in the southbound lane of travel until it reached the intersection of Sullivan Ave. and S. Central Ave." (*Id.* at 2–3). At this point, the Officers turned off the vehicle's lights and ended their pursuit. (*Id.*). They then watched the Nissan turn southbound onto the ramp of 70 East, and "estimated . . . [it] was traveling was around 90[mph] in a 55mph zone on the freeway during which [there was] a heavy flow of traffic . . . ." (*Id.*).

After observing the appearance of the driver, the Officers looked up the vehicle information and found it was registered to Plaintiff, Terry Caskey. (*Id.*). Once they made this determination, the Officers looked up Plaintiff's photograph on the Ohio Law Enforcement Gateway ("OHLEG")

---

[1] Plaintiff takes issue with this representation, arguing that "when cross-examined nearly a year ago about this supposedly hazardous situation, Officer Fenton admitted—because the dashcam video makes it obvious—there was no southbound traffic on Central Avenue." (*See* ECF No. 61 at 3 (citing ECF No. 55-1 at 4)).

and determined he was the same "older male, white, short hair and medium build they witnessed driving." (*Id*. at 3). Based on this alleged identification, "the Officers felt they had probable cause to believe Plaintiff was the driver of the vehicle that was fleeing from their audible and visible signals to pull over and creating a substantial risk of physical harm to persons or property." (ECF No 58 at 6). Defendant Fenton then submitted a police report requesting the Franklin County Prosecutor's Office indict Plaintiff for violating Ohio Rev. Code § 2921.331, Failure to Comply with the Order or Signal. (ECF No. 57-1 at 3).

The Country Prosecutor presented Officer Fenton's report to a grand jury, where a Columbus Police Department liaison was called to testify. (ECF No. 58 at 7 (citing ECF No. 56-1 at 3)). Neither Defendant Officer testified before the grand jury. (*Id*.). On November 21, 2018, the grand jury indicted Plaintiff for violating O.R.C. § 2921.331 and the County Prosecutor requested the issuance of a warrant for Plaintiff's arrest.[2] (ECF No. 56-1 at 4). Plaintiff was arrested outside his residence on November 22, 2018 (ECF. No. 42-1 at 4) and was released on his own recognizance on November 27, 2018 (ECF No. 58-5). Thereafter, on December 17, 2018, Plaintiff entered a not guilty plea. (*See* ECF No. 58-6). On April 24, 2019, the case was dismissed due to "insufficient evidence to prove identification." (ECF No. 58-7; ECF No. 42-1 at 7). Plaintiff was incarcerated for a total of five days. (*See* ECF No. 42-1 at 10).

Plaintiff represents "[t]he actual driver of the Nissan on the night in question was Robert Taliaferro, who later admitted" as such. (ECF No. 12 at ¶ 11). His "admission was captured on video by [Plaintiff] after he was released on bail . . . [and] was then given to the prosecuting attorney's office." (*Id*.). This disclosure, says Plaintiff, is the true reason his case was dismissed.

---

[2] The grand jury found Plaintiff "did operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring his motor vehicle to a stop and the operation of the motor vehicle by the offender cause a substantial risk of serious physical harm to persons or property." (ECF No. 56-1 at 4).

(ECF No. 57 at 8). Defendants, meanwhile, maintain the decision to dismiss Plaintiff's case "does not indicate Mr. Taliaferro, or any other person, was the actual person who committed the crime, it only states there was insufficient evidence to prove the identification of Plaintiff as the driver beyond a reasonable doubt."[3] (ECF No. 58 at 7).

### B. Procedural Background

On March 26, 2020, Plaintiff filed suit against Defendants Officers Nathan Fenton and Charles R. Harshbarger as well as the City of Columbus. (*See* ECF No. 1). Plaintiff alleges the police report Defendant Officers sent to the Franklin County Prosecutor requesting Plaintiff's indictment "consisted of reckless and/or knowingly false statements." (ECF No. 12 at ¶ 13). By offering these false statements, Plaintiff maintains, Defendant Officers "set in motion the prosecution of [Plaintiff], which ultimately led to his wrongful arrest and [] incarceration" (*Id.*). Specifically, Plaintiff brings claims for seizure without probable cause and malicious prosecution under 42 U.S.C. § 1983 against the Defendant Officers, as well as a state law claim for malicious prosecution against all Defendants. (*Id.*, at 4–8). As relief, Plaintiff seeks compensatory damages in excess of $25,000, punitive damages in excess of $25,000 as well as reasonable costs and fees. (*Id.* at 8). Defendants answered the Complaint on May 22, 2020. (ECF No. 8).

After the Magistrate Judge issued a scheduling order (*see* ECF No. 10) and the parties conducted some discovery, Plaintiff amended his Complaint. (*See* ECF No. 12). On October 29, 2020, after the deadline to produce expert reports had passed (*see* ECF No. 10 (setting the deadline for expert disclosures at August 28, 2020)), Plaintiff moved for leave to produce an expert report

---

[3] Defendants further represent that "[t]he prosecutor on the case never spoke to Defendant Officers regarding their ability to identify the driver of the vehicle or discuss[ed] the matter at all prior to or after dismissing the case." (ECF No. 58 at 8).

from James Sobek. (ECF No. 14). The Magistrate Judge granted Plaintiff's Motion, finding he was sufficiently diligent in bringing it and any prejudice to Defendants was slight. (ECF No. 23).

The parties participated in the Court's facilitated mediation program on December 15, 2020; however, they were unable to reach any settlement. (ECF No. 25). Thereafter, following an extension granted by this Court (*see* ECF Nos. 28) the parties continued with discovery. Prior to the filing of any dispositive motions, Plaintiff moved to exclude the testimony of Defendants' expert, Officer David Cornute. (EFC No. 40). That Motion is ripe, and this Court resolves it below.

The parties then filed their respective Motions for Summary Judgment which have been fully briefed and are ripe for review. (ECF Nos. 57, 58). While these Motions were being briefed, Plaintiff moved to amend his Complaint. (ECF No. 62). The Magistrate Judge denied Plaintiff's Motion, finding that granting leave to amend "after the close of discovery, would unduly prejudice Defendants[.]" (ECF No. 72 at 4). During this time, the parties filed several other motions, each of which are ripe. These include: Defendants' Motions to Bar Jim Shively's affidavit, photographs, and testimony (ECF No. 67) and to Strike or for Leave to File Sur-reply (ECF No. 81) as well as Plaintiff's Motions to Supplement (ECF No. 73) and for Leave to File Sur-reply (ECF No. 78).

This Court begins its analysis with the parties' motions to exclude expert testimony (ECF Nos. 40, 67) and then resolves the remaining non-dispositive motions (EFC Nos. 73, 78, 81). Lastly, this Court resolves the parties' Motions for Summary Judgment (ECF Nos. 57, 58).

## II.  STANDARDS

### A.  Motions to Exclude & *Daubert*

Federal Rule of Evidence 702 governs the testimony of expert witnesses. This rule reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).  *In re Scrap Metal Antitrust Litig.*,

527 F.3d 517, 528 (6th Cir. 2008). Together, Rule 702, *Daubert*, and *Kumho Tire* establish that district courts may admit expert testimony if it satisfies three requirements. *Id*. at 528–29 (describing the district courts' responsibility "of acting as gatekeepers to exclude unreliable expert testimony"). First, "the witness must be qualified by 'knowledge, skill, experience, training, or education.'" *Id*. at 529 (quoting Fed. R. Evid. 702). Second, the testimony "must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id*. (quotation omitted).  Third, "the testimony must be reliable." *Id*. To be relevant, expert testimony must "fit" with the issues to be resolved at trial. *Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999). The reliability requirement, in turn, focuses on the methodology and principles underlying the testimony. *Id*. at 496–97.

The proponent of the testimony must establish admissibility by a preponderance of the evidence. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n.10). A district court deciding whether an expert's opinion is reliable "is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *Stuckey v. Online Res. Corp.*, No. 2:08–CV–1188, 2012 WL 1808943, at *4 (S.D. Ohio May 17, 2012) (Marbley, J.)

### B.  Summary Judgment

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in the non-moving party's favor. *U.S. Sec. & Exch. Comm'n v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013). This Court then asks "whether 'the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986)). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. Evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

On a motion for summary judgment, the initial burden rests upon the movant to present the Court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there remains a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (finding that after the burden shifts, the nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury"). In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Self-serving affidavits alone, however, are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Wash. Cnty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013). "The mere existence of a scintilla of evidence to support [the non-moving

party's] position [is] insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

"[T]he standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) Thus, in reviewing cross-motions for summary judgment, a court must still "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

### III.    LAW & ANALYSIS

### A.  Motions to Exclude

Plaintiff moves to exclude Defendants' rebuttal expert Officer David Cornute (ECF No. 40), while Defendants move to exclude the testimony and photographs of Jim Shively (ECF No. 67). For the following reasons, both Motions are **DENIED**. Given this disposition, Plaintiff's Motion for Leave to File Sur-Reply (ECF No. 78) is **DENIED as moot**.

#### *1.  Plaintiff's Motion to Exclude*

Defendants offer Officer Cornute as a rebuttal expert to Plaintiff's expert, James Sobek. (ECF No. 41 at 13–19). Officer Cornute, a twenty-six-year veteran of the Columbus Police Department, rebuts Mr. Sobek's conclusion that it was impossible for the Defendant Officers to identify the driver of the Nissan on the night in question. (*Id*.). Plaintiff argues Officer Cornute's testimony is not based on scientifically valid principles or sufficient facts and data and is, therefore, not relevant. (*See generally* ECF No. 40). In making these arguments, Plaintiff relies on Fed. R. Evid. 702 and the Supreme Court's ruling in *Daubert*. Lastly, Plaintiff asserts that regardless of these standards, Officer Cornute's testimony is inadmissible because it violates Evid. R. 608(a) in that it bolsters the credibility of Defendant Officers. (*Id*. at 17).

Defendants assert, as a proper rebuttal expert, Officer Cornute's testimony will refute Mr. Sobek's conclusions and will assist the trier of fact in understanding how officers make identifications. (ECF No. 41 at 4). Defendants represent they have identified several factual misrepresentations in Mr. Sobek's report that Officer Cornute is qualified to rebut given his significant experience as a police officer. (*Id*. 4–6). Furthermore, given this experience, Defendants maintain Officer Cornute has specialized knowledge on the lighting capacity of the vehicles and on how officers make identifications in the field. (*Id*.). To end, Defendants argue Officer Cornute's testimony should not be excluded because Plaintiff believes his testimony bolsters the credibility of Defendant Officers, particularly as their credibility has already been attacked. (*Id*. at 8).

District courts evaluating the reliability of non-scientific expert testimony do not have to focus on whether the expert employed an objective standard or methodology and can instead "focus on the reliability of the expert's personal knowledge or experience." *Luna v. Bell*, No. 3:11-CV-00093, 2013 WL 12316066, at *5 (M.D. Tenn. Aug. 1, 2013); *see also First Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 334 (6th Cir. 2001) (noting that *Daubert* standards are "only of limited help in assessing technical or experiential expertise"). The relevant inquiry is whether the expert has applied his experience to the facts of the case. *Id*. The Sixth Circuit has acknowledged that often, "experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." *Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005). A non-scientific expert, however, is still required to "explain how that experience leads to the conclusion reached . . . and how that experience is reliably applied to the facts." *Id*. at 432. Courts have considerable leeway in determining whether evidence is reliable. *See Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671–72 (6th Cir. 2010); *see also Kumho Tire Co*, 526 U.S. at 153 ("[W]hether

*Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine.").

As Officer Cornute's expert report and testimony is based solely on his personal knowledge and experience, rather than any scientific or technical expertise, this Court finds that he is a non-scientific expert. As such, this Court focuses solely on "the reliability of [his] personal knowledge or experience." *Luna*, 2013 WL 12316066 at *5; *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007) (holding that district courts need not adhere to *Daubert*'s "enumerated factors" where non-scientific expert testimony is concerned).

This Court finds Officer Cornute reliably applied his experience to the facts of the case. He used his significant experience as a police officer to rebut Mr. Sobek's conclusions regarding the lights on PTV 88 (*see* ECF No. 41 at 13–14) and the ability of officers to make identifications in less-than-ideal conditions (*id*. at 16–19). He also offers reliable testimony regarding the alleged insufficiency of Mr. Sobek's recreation of the night in question; specifically, why using a different vehicle yields unreliable results. (*Id*.). Moreover, where the reliability of evidence is in dispute, it is more appropriate for a judge to admit the evidence than to keep it from the factfinder because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Accordingly, Plaintiff's Motion (ECF No. 40) is **DENIED**.

### 2. *Defendant's Motion to Exclude*

After moving for summary judgment, Defendants moved to exclude Jim Shively from offering expert testimony and to preclude his affidavit and photographs from being considered. (ECF No. 67). Mr. Shively is a professional photographer, who took photographs which Plaintiff alleges demonstrate what the Officer's would have been able to see that night. (*Id*. at 2). The main

basis for Defendant's Motion is that Plaintiff failed to disclose him pursuant to Fed. R. Civ. P. 26(a)(2)(C). (*Id*. at 3–7). Given this failure, say Defendants, Plaintiff can not use that information or witness to supply evidence unless the failure was substantially justified or harmless. (*Id*. at 3 (citing Fed. R. Civ. P. 37(c)(1))). Defendants maintain Plaintiff has not shown his failure to disclose Mr. Shively was either substantially justified or harmless. (*Id*. at 4–6).

In response, Plaintiff argues Mr. Shively is not being offered as an expert so he was not required to disclose him as such. (ECF NO. 71 at 3). Mr. Shively's testimony and photographs, says Plaintiff, have been presented as evidence demonstrating it is impossible to visually identify the driver of a Nissan from 16 feet away in daylight. (*Id*.). Plaintiff asserts Mr. Shively's affidavit is related only to the process he used in taking photographs and what he observed that day. (*Id*.). As a result, Plaintiff argues he is merely a percipient witness, not an expert. (*Id*.).

In reply, Defendants maintain Mr. Shively is an expert witness whom Plaintiff failed timely to disclose. (*See* ECF No. 75 at 2–6). Defendants highlight Mr. Shively's professional expertise as well as Plaintiff's insinuation that his photographs accurately reflect what the Defendant Officers would have been able to see that night. (*Id*. at 5). Furthermore, Defendants argue Mr. Shively is not a percipient witness, as he was specifically retained to produce expert evidence. (*Id*. at 6–8).

Lay witnesses are restricted in offering opinion testimony. Such testimony must be "rationally based on the witness's perception," "helpful to understanding the witness's testimony or to determining a fact in issue," and "not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. The Sixth Circuit has "previously acknowledged a lay witness's ability to identify objects based upon personal observation[,]" and to testify regarding matters "open to the senses." *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 241 (6th Cir. 2010) (citing *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 847–48 (10th Cir.1979); *Aetna Life Ins. Co. of*

*Hartford, Conn. v. Kelley*, 70 F.2d 589, 593 (8th Cir.1934) (holding that a non-expert may testify to matters that are "open to the senses"). "For example, a nurse could testify as a lay witness that a skin injury appeared to be the result of a cigarette burn, but a court would have to qualify a paramedic as an expert before the paramedic could testify that certain bruises are indicative of skull trauma." *Rich v. City of Savannah, Tenn.*, No. 1:02-1222 T/P, 2005 WL 6739799, * 2 (W.D. Tenn. June 20, 2005) (citing *State v. Brown*, 836 S.W.2d 530, 549 (Tenn.1992)).

Based on the record, this Court finds that none of the anticipated testimony or photographs offered by Mr. Shively constitutes expert testimony. Rather, this Court finds that Mr. Shively is merely a lay witness. Mr. Shively took various photographs, which Plaintiff alleges illustrate the officer's vantage point on the night in question. His testimony will be limited to "when and how the photographs were taken and lay[ing] a foundation for the admission of those photographs as evidence at trial." *Rich*, 2005 WL 6739799 at * 2. Furthermore, "[h]is anticipated testimony will be limited to his own personal observations while taking the photographs." *Id*. Simply because Mr. Shively is a professional photographer, "does not make his testimony expert in nature." *Id*. (finding that a professional photographer who took photographs of a houses' interior following a stabbing was not an expert, given that "[a]nyone with a camera has the ability to take photographs").

Given the scope of Mr. Shively's testimony, any professional expertise aside, this Court finds that he is not an expert and therefore Plaintiff was not required to disclose him in accordance with Rule 26. Accordingly, Defendants' Motion (ECF No. 67) is **DENIED**. Furthermore, given this disposition, Plaintiff's Motion for Leave to File Sur-reply (ECF No. 78) is **DENIED as moot**.

### B. Other Non-Dispositive Motions

Finally, before discussing the parties' summary judgment motions, this Court address two remaining pending Motions—Plaintiff's Motions to Supplement the Record (ECF No. 73), and Defendants' Motion to Strike or for Leave to File Sur-reply (ECF No. 81).

After the parties' completed briefing on their respective summary judgment motions, Plaintiff moved to supplement the record by submitting the complete file from his underlying criminal case. (ECF No. 73 at 1). Plaintiff represents supplementation is necessary given Defendants' argument his criminal case was not terminated in his favor because he paid court costs. (*Id.*). The complete file allegedly does not show Plaintiff paid any court costs, despite his testimony otherwise. (*Id.*; *see also* ECF No. 42-1 at 7). Defendants object, asserting there has been no newly discovered evidence which would require such supplementation and that, regardless, any change to Plaintiff's deposition testimony is untimely pursuant to Fed. R. Civ. P. 30(e). (*See generally* ECF No. 76). Defendants also filed a Motion to Strike Plaintiff's Motion to Supplement or For Leave to File a Sur-reply (*see* ECF No. 81). Therein, Defendants assert Plaintiff improperly raised new arguments in his reply brief and those arguments should be stricken, or, in the alternative, they should be granted leave to file a sur-reply. (*Id.*).

Beginning first with Defendants' Motion, this Court sees no reason to strike references to the aforementioned criminal case file. The Court may, upon motion or on its own, strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Pr. 12(f). Motions to strike are entrusted to the "sound discretion of the trial court, but are generally disfavored." *Yates-Mattingly v. University of Cincinnati*, No. 1:11–cv–753, 2013 WL 526427, at *1 (S.D. Ohio Feb. 11, 2013). Indeed, "[s]triking pleadings is considered a drastic remedy to be used sparingly and only when the purposes of justice so require." *Id*. (citing *Brown & Williamson*

*Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)). On the record before it, this Court does not find the file at issue, Doc. Nos. 0034-0053 and 0067-0094, contains anything "redundant, immaterial, impertinent, or scandalous." The case file contains relevant, admissible information and any prejudice to Defendants is slight. On those same grounds, this Court sees no reason Defendants should be permitted leave to file a sur-reply. *See* S.D. Ohio Civ. R. 7.2(a)(2) (prohibiting "additional memoranda beyond those enumerated . . . except upon leave of court for good cause shown"); *see also Soc'y of St. Vincent De Paul in the Archdiocese of Detroit v. Am. Textile Recycling Servs.*, No. 13-CV-14004, 2014 WL 65230, at *3 (E.D. Mich. Jan. 8, 2014)("[T]he decision to grant or deny leave to file a sur-reply is committed to the sound discretion of the court."). Accordingly, Defendants' Motion (ECF No. 81) is **DENIED**.

Finally, concerning Plaintiff's Motion to Supplement the Record (ECF No. 73) this Court finds that supplementation is appropriate here. Local Rule 7.2 governs the supplementation of the record and is aimed at avoiding "piecemeal submission of evidence and unnecessary memoranda." S.D. Ohio Civ. R. 7.2(d). Supplementation is appropriate so long as the "extraneous evidence would [not] unnecessarily bloat this matter's . . . docket [or] . . . contravene the purpose" of Rule 7.2. *Best v. AT&T, INC.*, No. 1:12-CV-564, 2014 WL 12572862, *1 (S.D. Ohio May 2, 2014). As the submission here is not unnecessarily lengthy, and considering this Court's preference cases are resolved on a complete record, Plaintiff's Motion (ECF No. 73) is **GRANTED**.

### C.  Summary Judgment Motions

Each party claims it is entitled to summary judgement. Plaintiff, for his part, argues summary judgment is appropriate on each cause of action because "the Officers did not have probable cause to have [him] arrested or prosecuted[,] . . . the presumption that probable cause existed has been rebutted[,]" and qualified immunity does not apply. (ECF No. 57 at 35, 36).

Defendants, meanwhile, seek summary judgment on all claims asserted against them, largely because Defendant Officers are entitled to qualified immunity. (*See generally* ECF No. 58). This Court begins with Plaintiff's Motion.

### 1. Plaintiff's Motion for Summary Judgment

Plaintiff filed his Motion on August 12, 2021, asserting that because there was no probable cause to have him arrested or prosecuted, he is entitled to summary judgment on his Fourth Amendment claim, as well as his malicious prosecution claims, under federal and state law. (ECF No. 57 at 2). Defendants timely responded, and Plaintiff replied making the Motion ripe for review. As a matter of procedure, this Court begins its analysis with qualified immunity. *See Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000) ("The ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity.").

### a. Qualified Immunity

Plaintiff argues Defendant Officers are not entitled to qualified immunity. Specifically, he asserts: (1) the Officers' conduct violated his constitutional right to be free from unwarranted seizure and malicious prosecution; and (2) those rights are "clearly established." (ECF No. 57 at 32 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (recognizing qualified immunity is a two-step analysis: (1) whether the officers violated Plaintiff's constitutional rights, and if so, (2) were those rights were clearly established at the time))). As to the first argument, Plaintiff claims that, taken together, the record and his expert's report show Defendant Officer could not have identified the driver of the Nissan on the night in question and therefore, their claim otherwise is false. (*Id*. at 32–33). Moreover, says Plaintiff, by authoring this allegedly false report, Defendant Officers "made, influence or participated in the decision" to maliciously prosecute him. (*Id*. at 33). As to the second argument, Plaintiff emphasizes that the Sixth Circuit has repeatedly held that the right

to be free from unwarranted seizure and malicious prosecution were both "clearly established" at the time of the alleged constitutional violation. (*Id*. at 33–34 (citing *Ouza v. City of Dearborn Heights, Michigan*, 969 F.3d 265, 279 (6th Cir. 2020) (recognizing arrest without probable cause violates the Fourth Amendment); *Jones v. Clark Cty., Kentucky*, 959 F.3d 748 (6th Cir. 2020) (recognizing "a clearly established Fourth Amendment right to be free from malicious prosecution"))). Given this well-established precedent, says Plaintiff, Defendant Officers are not entitled to qualified immunity. (*Id*. at 34).

Defendants, meanwhile, assert Plaintiff cannot prove either requirement of qualified immunity and merely speculates Defendant Officers lied in their report without any actual evidence they did not observe Plaintiff driving the Nissan that night. (ECF No. 63 at 11). While they concede these rights are "clearly established," Defendants assert there was no corresponding constitutional violation given the existence of probable cause, intervening acts by the County Prosecutor as well as that Plaintiff's criminal case was not resolved in his favor. (*Id*.). As qualified immunity generally applies unless it is obvious a reasonably competent official would have concluded his actions were unlawful, and there was no such overtness here, Defendants argue they are entitled to summary judgment. (*Id*.).

Qualified immunity shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal quotations omitted)). Qualified immunity is a two-step analysis: this Court must determine whether the officers violated Plaintiff's constitutional rights, and if so, whether those rights were clearly established at the time. *Smith v. Stoneburner*, 716 F.3d 926, 929 (6th Cir. 2013) (citing *Pearson*, 555 U.S. at 236). In this context,

16

"clearly established" means "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal quotations omitted)). Courts must "define the 'clearly established' right at issue on the basis of the 'specific context of the case.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). Such specificity is "especially important in the Fourth Amendment context" because of the highly fact-intensive nature of the inquiry. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). "Although . . . qualified immunity comprises a legal issue, summary judgment is inappropriate when conflicting evidence creates subordinate predicate factual questions which must be resolved by a fact finder at trial." *Hamilton v. Myers*, 281 F.3d 520, 531 (6th Cir. 2002).

First, when the facts are viewed in a light most favorable to Plaintiff, it appears Defendant Officers may have violated Plaintiff's Fourth Amendment rights by arresting him for violation of O.R.C. § 2921.331 without probable cause to do so. Second, at the time of this incident, it was clearly established that an arrest not supported by probable cause violates the Fourth Amendment. *Stahl v. Coshocton Cty.*, 754 F. App'x 335 (6th Cir. 2018) ("It is a well-settled principle of constitutional jurisprudence that an arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment."). Because this Court ultimately finds there exists a genuine issue of material fact as to the existence of probable cause (*see infra* at Part III(C)(1)(b)), a grant of qualified immunity would be improper. *Shevlin v. Cheatham*, 211 F. Supp. 2d 963, 972–73 (S.D. Ohio 2002).

Similarly, when the facts are viewed in a light most favorable to Plaintiff, it appears Defendant Officers may have violated Plaintiff's right to be free from malicious prosecution, particularly where they may have made "knowingly or recklessly" false statements material to the

prosecution. (*See infra* at Part III(C)(2)(c)). Furthermore, at the time of this incident, it was clearly established individuals have a "Fourth Amendment right to be free from malicious prosecution by a defendant who has made, influenced, or participated in the decision to prosecute [him]." *Jones*, 959 F.3d at 765. Here again, because there exists a genuine issue of material fact as to whether Defendant Officers made false statements in their police report, a grant of qualified immunity would be improper.

Given these determinations, coupled with the following analysis of probable cause (*see infra* at Part III(C)(1)(b)), Defendants' request for qualified immunity is **DENIED**. Given the following genuine issue of material fact, however, this Court also cannot conclude Plaintiff is entitled to summary judgment on any of his claims and rejects his contention "there is only one reasonable determination possible." *Gardenhire*, 205 F.3d at 315.

b.   Fourth Amendment Seizure without Probable Cause

Plaintiff alleges the evidence of record establishes it was not physically possible for the Officers to have identified the Nissan driver, and their contention otherwise is merely a "visible fiction." (*Id.* at 3, 27). This fiction is so unbelievable, says Plaintiff, the question of whether probable cause existed need not be left to a jury as there is only one reasonable determination possible. (*Id.* at 3 (citing *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007) (recognizing that while probable cause is generally a jury question, an exception exists where "there is only one reasonable determination possible"))). Plaintiff represents this is especially the case given both the findings of his expert Mr. Sobek (*id.* ("Mr. Sobek provides several reasons, all given with a reasonable degree of certainty, why it was not physically possible for the Officers to have identified the Nissan driver")), as well as the photographs and testimony of Mr. Shively (*see id* at 1 (the "photographs taken by . . . Jim Shively [show] that even during daylight, it was impossible for the

Officers to see inside the car and identify the driver)). To Mr. Sobek's report specifically, Plaintiff argues it has substantial factual foundation, and any minor incongruencies do not impact the reliability of the report's conclusions. (*See* ECF No. 70 at 1–4).

Plaintiff further argues the presumption of probable cause stemming from an indictment issued by a grand jury has been successfully rebutted. (*Id*. at 5 (citing *King v. Harwood*, 852 F.3d 568, 587–588 (6th Cir. 2017) (recognizing the presumption may be rebutted where law-enforcement (1) knowingly or recklessly makes false statements that (2) are material to the ultimate prosecution of plaintiff and (3) do not consist solely of grand-jury testimony))). Plaintiff asserts Officers Fenton and Harshbarger lied in their report, that report resulted in him being arrested and detained and did not consist solely of grand-jury testimony. (*Id*.). With the presumption rebutted, Plaintiff goes one step further and asserts the question of probable cause need not be presented to a jury as there is only one reasonable determination possible. (*Id*. at 3).

Defendants argue regardless of qualified immunity, probable cause existed when Defendant Fenton drafted his police report and submitted it to the Prosecutor's Office. (ECF No. 63 at 11–15). In making these arguments Defendants take issue with both of Plaintiff's experts— Mr. Shively and Mr. Sobek. With respect to Mr. Sobek, Defendants argue his analysis and conclusions are based on "incorrect facts and assumptions." (*Id*. at 9). Specifically, Defendants maintain that: PTV 88 had more lights on it than what Mr. Sobek identified; the on-site investigation he conducted was deficient as the vehicle he used was substantially smaller and lower to the ground than PTV 88; and the dash-cam footage he bases his conclusions on does not accurately capture the various illumination sources at the scene. (*Id*. at 9).  Ultimately, Defendants assert Mr. Sobek's opinion should not be given the weight Plaintiff wishes. (*Id*. at 11).

Defendants further maintain Plaintiff must prove the Officers were the cause of the unlawful seizure and there was no intervening event. (*Id*. at 14 (citing *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012)). According to Defendants, there exists no facts to show the causal connection between Defendant Officers' report and the decision of the Prosecutor's Office to put the indictment on a warrant. (*Id*. at 15). Defendants also assert that because Plaintiff has not offered reliable evidence one of the Defendant Officers deliberately mislead or provided misleading information that influenced the grand jury's decision, he has not rebutted the presumption of probable cause stemming from the indictment. (*Id*.). Lastly, Defendants argue there is no basis for liability against Defendant Harshbarger, as Plaintiff has not specifically shown he was involved in any of the alleged unconstitutional conduct. (*Id*. at 18).

"The Fourth Amendment, which is made applicable to the states by its incorporation into the Fourteenth Amendment, mandates that 'a law enforcement officer may not seize an individual except after establishing probable cause that the individual has committed, or is about to commit, a crime.'" *Radvansky*, 395 F.3d at 302 (quoting *Williams v. Cambridge Bd. of Educ.*, 370 F.3d 630, 636 (6th Cir. 2004)). A police officer has probable cause to make an arrest when "at the moment the arrest was made . . . the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing [] the [arrestee] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). A reviewing court "must assess the existence of probable cause 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Radvansky*, 395 F.3d at 302 (quoting *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001)). Determining whether probable cause exists generally "'presents a jury question, unless there is

only one reasonable determination possible.'" *Gardenhire*, 205 F.3d at 315 (quoting *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995)).

The most significant basis for Plaintiff's position is the testimony and report of Mr. Sobek. Plaintiff argues Mr. Sobek has shown it was impossible for Defendant Officers to have identified the individual driving the Nissan that night, given the inadequate visibility and limitations of human vision. (ECF No. 57 at 32). This finding, says Plaintiff, shows that when Defendant Officers represented they were able to observe the driver, they lied. (*Id.*). Mr. Sobek concluded it was impossible for Defendant Officers to have identified the driver of the vehicle for five reasons:

> (1) illumination levels onto an object must exceed 0.1 footcandles for the human eye to see color and detail, and the illumination level on the back of the Nissan driver's head was far below that level; (2) the difference in illumination levels between the trunk area of the Nissan and the rear of the driver's head, precludes the human eye from seeing any detail inside; (3) Defendant Officers only had a clear line of sight that would have enabled them to see the driver of the Nissan for three seconds; (4) neither Officer had a line of sight that permitted them to assess the driver's build; and (5) in recreating the scenario at issue in this case, Mr. Sobek could not see, let alone identify, the facial features of the drivers in the cars ahead of him.

(*Id.* 17–22). Taken together, argues Plaintiff, each of these findings illustrates there is no conceivable way Defendant Officers could have identified the driver of the Nissan that night. (*Id.*). There is only one reasonable determination possible, declares Plaintiff. (*Id.*).

Upon review, this Court finds the conclusions of Mr. Sobek, along with the dash-cam footage from PTV 88, significant. Viewing the facts in a light most favorable to Defendants, however, this Court cannot conclude Defendant Officers did not have probable cause to arrest Plaintiff. Ultimately, there is a genuine question of material fact as to whether Defendant Officers would have been able to see the driver of the Nissan well enough to identify him. And, as a result, there similarly exists a genuine issue of material fact whether the Officers knowingly or recklessly made false statements in their report to the County Prosecutor. While this allows Plaintiff to

overcome the presumption of probable cause stemming from the issuance of an indictment by a grand jury,[4] it also means he is not entitled to summary judgment.

This Court rejects Plaintiff's contention that this question need not be presented to a jury as there is only one reasonable determination possible. *Gardenhire*, 205 F.3d at 315. Mr. Sobek's conclusions do not affirmatively show Defendant Officer could not have identified the driver. The relevant dash-cam footage supports this determination. While it was certainly dark, there was at least a possibility Defendant Officers were able to identify the driver of the vehicle during their pursuit of the vehicle. In fact, Mr. Sobek himself testified the Officers would have seen better than what the dash-cam footage shows. (ECF No. 42-2 at 13). Ultimately, the question of probable cause must be left to a jury. *See Radvansky*, 395 F.3d at 302 ("Determining whether probable cause existed presents a jury question, unless there is only one reasonable determination possible."); *Osberry v. Slusher*, 750 F. App'x 385, 392 (6th Cir. 2018) ("In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible.") (quoting *Parsons v. City of Pontiac*, 533 F.3d 492, 501 (6th Cir. 2008)).

This Court also rejects Defendants' argument regarding the alleged intervening acts of the County Prosecutor. The Sixth Circuit has held that even when, as here, a prosecutor retains all discretion to seek an indictment, a police officer may remain liable to a wrongfully indicted defendant when the officer has lied to or misled the prosecutor. *Sykes v. Anderson*, 625 F.3d 294, 317 (6th Cir. 2010). As detailed above, there is a genuine question of material fact as to whether Defendant Officers knowingly or recklessly made false statements in their report to the County

---

[4] The presumption is rebutted where law-enforcement (1) knowingly or recklessly makes false statements that (2) are material to the ultimate prosecution of plaintiff and (3) do not consist solely of grand-jury testimony. *King*, 852 F.3d at 587–588. Plaintiff has shown there exists a genuine issue of material fact as to whether Defendant Officers knowingly or recklessly made false statements in their report. Furthermore, these alleged false statements were material to the ultimate prosecution of Plaintiff (see ECF No. 56-1 at 4) and neither Officer testified at the grand jury (see ECF No 56-1 at 3). So, at least at summary judgment, Plaintiff has sufficiently rebutted the presumption.

Prosecutor. Finally, this Court discards Defendants' argument on Defendant Harshbarger's participation and liability. (ECF No. 69 at 13). The police report, coupled with the representations in his affidavit, illustrate Defendant Harshbarger was involved in the alleged deprivation of Plaintiff's constitutional rights. Specifically, the information underlying the indictment is based on an alleged identification made by both officers. Accordingly, Officer Harshbarger cannot escape liability simply because he did not author the police report at issue.

Given the genuine issues of material fact identified above, Plaintiff's motion for summary on his Fourth Amendment Seizure without Probable Cause claim is **DENIED**.

### c. Malicious Prosecution – Federal & State Law

On his malicious prosecution claims, Plaintiff highlights the lack of probable cause and resulting Fourth Amendment violation. He recognizes the similarity between the requirements for proving such a claim under both federal and state law and maintains he has satisfied each. (*Id*. at 34 (citing *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (recognizing that, under § 1983, an action for malicious prosecution requires: (1) a criminal prosecution initiated against plaintiff, and defendant(s) made, influenced or participated in the decision to prosecute; (2) a lack of probable cause; (3) a deprivation of liberty as a consequence of the legal proceeding; and (4) a resolution of the criminal proceeding in plaintiff's favor); *Trussell v. General Motors Corp.*, 53 Ohio St. 3d 142 (1990) (recognizing that, under Ohio law, an action for malicious prosecution requires: (1) malice in instituting or continuing the prosecution; (2) a lack of probable cause; and (3) a resolution of the criminal proceeding in plaintiff's favor))).

Plaintiff represents: (1) criminal proceedings were initiated against him and Defendants influenced and participated in the decision to prosecute him, specifically by offering false statements; (2) there was no probable cause; (3) he suffered a deprivation of liberty as he was

arrested without probable cause and detained for five days; and (4) his criminal case was resolved in his favor. (ECF No. 57 at 34–35). Plaintiff asserts Officers Fenton and Harshbarger acted maliciously by making reckless or knowingly false statements which set in motion his criminal prosecution without probable cause. (ECF No. 12 at ¶¶ 33–35). Regarding the final requirement, Plaintiff specifically notes the Sixth Circuit has held "'[t]he fact [] the government recognized its error and moved to dismiss charges before a trial could be conducted or completed should not bar a subsequent malicious prosecution claim.'" (*Id*. at 6 (quoting *Jones v. Clark County, Kentucky*, 959 F.3d 748, 764 (6th Cir. 2020)). To the Ohio law requirement of "malice," Plaintiff argues it is present here given his claim Defendant Officers submitted a false report. (ECF No. 57 at 35). Plaintiff also alleges Defendant City of Columbus is liable for the damages suffered as the employer of Defendant Officers. (ECF No. 12 at ¶ 40).

Defendants, meanwhile, reiterate their previous contentions regarding the existence of probable cause. (*See supra* at Part III(C)(1)(b)). Defendants assert that because Plaintiff has not sufficiently rebutted the presumption of probable cause stemming from the indictment, both his malicious prosecutions claims must fail. (ECF No. 63 at 17) (asserting that because both federal and state law require a lack of probable cause for an actionable malicious prosecution claim, Plaintiff "cannot prove . . . there is no genuine issue of material fact regarding . . . every element of either malicious prosecution claim[]")). Setting aside probable cause, Defendants further assert Plaintiff has not sufficiently proven the other elements of either malicious prosecution claim. First, Defendants reiterate their argument on the intervening actions of the County Prosecutor. (*Id*. at 15 (citing *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015))). Second, Defendants argue the dismissal of Plaintiff's criminal case was merely a compromise with the prosecution, not a dismissal because of Plaintiff's innocence. (*Id*. at 16). Regarding Ohio's requirement of "malice,"

Defendants assert there is no evidence of malice by any Defendant. (*Id*. at 17). Lastly, Defendants argue the City is immune from Plaintiff's state-law malicious prosecution claim.[5] (*Id*.).

As detailed above, to be entitled to summary judgment on either of these claims Plaintiff must show, among other things, that there was no probable cause for his arrest. This Court has, however, already determined there exists a genuine issue of material fact as to whether Defendant Officers would have been able to see the driver of the Nissan well enough to identify him. (*See infra* at Part III(C)(1)(b)). And, as a result, there exists a genuine issue of material fact about the existence of probable cause. (*Id*.). Accordingly, regardless of Plaintiff's ability to prove the remaining elements of either malicious prosecution claim, he cannot be granted summary judgment without a conclusive finding on probable cause. As there can be no such determination, given the genuine issues of material fact previously discussed, Plaintiff's motion for summary judgment on his federal and state law malicious prosecution claims is **DENIED**.

### 2. Defendants' Motion for Summary Judgment

Defendants' Motion for Summary Judgment revolves largely around the question of qualified immunity. This Court, however, has already addressed and disposed of Defendant Officers' qualified immunity defense. (*See supra* at Part III(C)(1)(a)). Accordingly, this Court begins with Defendants' remaining arguments for summary judgment.

### a. Fourth Amendment Seizure without Probable Cause

Defendants argue regardless of the presumption of probable cause stemming from the indictment, the Officers had probable cause to believe Plaintiff was the driver of the Nissan and, after observing the OHLEG photograph, that Plaintiff was the registered owner. (*Id*. at 13). Defendants maintain the findings of Mr. Sobek do not change this conclusion. (*Id*.). They assert

---

[5] As this argument is more fully made in Defendants' Motion, the Court withholds its evaluation of this argument until it reaches its analysis of that Motion. (*See infra* at Part III(C)(2)(c)).

Mr. Sobek's on site investigation should be completely disregarded, or given little weight, because it is merely experimental evidence. (ECF No. 69 at 4). Such evidence, argue Defendants, is only admissible where it is relevant and probative. (*Id*. (citing *U.S. v. Baldwin*, 418 F.3d 575, 579-580 (6th Cir. 2005)). Lastly, Defendants again contend the County Prosecutor's actions represent an intervening superseding cause which breaks the causal chain between the Officers' conduct and Plaintiff's alleged unlawful seizure. (*Id*. at 12).[6]

In response, Plaintiff maintains his arguments regarding the alleged "fiction" created by Defendant Officers. (*See* ECF No. 61 at 1–4). He represents the dash-cam footage and Mr. Sobek's report directly contradict the narrative set forth by Defendants. (*Id*.). Plaintiff defends the analysis and conclusions of Mr. Sobek, arguing Defendants' criticism of his investigation is misplaced because it is based on issues that are not material. (*Id*. at 6). Furthermore, Plaintiff maintains the actions of the County Prosecutor do not break the causal chain because Defendant Officers made material, reckless and/or false statements that set a prosecution in motion, and the Officers did not testify before the grand jury. (*Id*. at 4–5 (citing *King*, 852 F.3d at 587–588 (6th Cir. 2017))).

This Court's analysis of Defendants' Motion is necessarily abbreviated, largely given its previous determination that there exists a genuine issue of material fact, as to both the existence of probable cause and the truthfulness of Defendant Officers' statements in their police report. (*See supra* at Part III(C)(1)(b)). As detailed above, the conclusions of Plaintiff's experts, along with the dash-cam footage from the night in question, illustrate there is a genuine question of material fact as to whether Defendant Officers would have been able to see the driver of the Nissan. (*Id*. (detailing Mr. Sobek's finding that, among other things, the illumination level on the back of the Nissan driver's head was far below the levels necessary for the human eye to see color and detail)).

---

[6] Defendants also make this argument in their opposition to Plaintiff's Motion, and this Court has already found it meritless. (*See* Part III(C)(1)(b)).

Given this determination, there similarly exists a question of material fact as to whether the Defendant Officers knowingly or recklessly made false statements in their report. (*Id*.) As a result, at least at the summary judgment stage, this Court found Plaintiff overcame the presumption of probable cause stemming from the issuance of an indictment by a grand jury. (*Id*. (recognizing that given the genuine issue of material fact as to Defendant Officers' ability to see the Nissan driver, the materiality of these alleged statements to Plaintiff's ultimate prosecution, and the lack of grand jury testimony, the presumption was rebutted)). Accordingly, Defendants' motion for summary judgment on Plaintiff's Fourth Amendment claim is **DENIED**.

b.  Malicious Prosecution

Defendants argue Plaintiff cannot prove there is no genuine issue of material fact regarding every element of either malicious prosecution claim. (*Id*. at 17). First, Defendants reiterate their argument on the intervening actions of the County Prosecutor. (*Id*. at 15 (citing *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015))). Second, Defendants assert Plaintiff cannot show the absence of probable cause or that his criminal case was resolved in his favor. (*Id*. at 15–16). Concerning the latter, Defendants argue the dismissal entry does not state the prosecutor believed Plaintiff was innocent, only that the Prosecutor did not believe he had enough evidence to reach his required burden in trial. (ECF No. 69 at 12–13). Lastly, regarding "malice," Defendants again assert there is no evidence of malice in the record. (ECF No. 58 at 17).

Plaintiff argues his criminal case was resolved in his favor, given the Sixth Circuit's holding in *Jones v. Clark County, Kentucky*, 959 F.3d 748 (6th Cir. 2020). (*Id*. at 6). There, the Sixth Circuit held "[t]he fact that the government recognized its error and moved to dismiss charges before a trial could be conducted or completed should not bar a subsequent malicious prosecution claim." *Jones*, 959 F.3d at 764. Plaintiff further asserts, he has sufficiently shown

Defendant Officers acted with malice. In support of this position, he states "'[m]alice may be inferred from the absence of probable cause.'" (*Id*. at 11 (quoting *Stillwagon v. City of Delaware*, 274 F.Supp.3d 714, 778 (S.D. Ohio 2017))). Plaintiff maintains he has offered sufficient evidence to create a genuine issue of material fact as to each of these claims, so the Court should not grant Defendants' Motion.

Plaintiff has shown there is an issue of material fact as to whether Defendants influenced and participated in the decision to prosecute him, specifically by offering false statements. Similarly, this Court has already determined there is a genuine issue of material fact as to the existence of probable cause, and neither party disputes Plaintiff was arrested and detained for five days. The only remaining question, therefore, is whether Plaintiff's criminal case was resolved in his favor. Notably, "[t]his element is similarly interpreted under federal and Ohio law." *Mango v. City of Columbus*, No. 2:19-CV-3120, 2020 WL 5247939 (S.D. Ohio Sept. 3, 2020).

Plaintiff's criminal case was dismissed on April 24, 2019, due to insufficient evidence to prove identification. (ECF No. 58-7; ECF No. 42-1 at 7). Plaintiff represents, however, he was required to pay court costs. (*Id*.). The Sixth Circuit has held that "[c]ategorically construing the favorable termination requirement to exclude plaintiffs whose cases were dismissed without prejudice would undermine the ability of malicious prosecution claims to hold officials accountable for baseless legal proceedings simply because those proceedings ended prior to a verdict." *Jones*, 959 F.3d at 764. In that same case, however, the Court noted that a plaintiff "must still demonstrate that his 'dismissal indicates that [he] may be innocent of the charges,' *Ohnemus v. Thompson*, 594 F. App'x 867 (6th Cir. 2014), or that a conviction has become "improbable," Restatement (Second) of Torts § 660. *Id*. Furthermore, the determination of "whether a termination

is sufficiently favorable ultimately rests with the trial court as a matter of law, absent a factual dispute relative to the circumstances of the dismissal." *Id*.

On the record before it, this Court finds Plaintiff has established a factual dispute to overcome his burden at summary judgment. The case filings illustrate the County Prosecutor dismissed Plaintiff's case because there was insufficient evidence to identify him as the driver of the Nissan. (*See* ECF No. 58-7; ECF No. 42-1 at 7). Plaintiff represents he offered the Prosecutor video evidence that proved he was not driving the vehicle when Defendant Officers allegedly identified him. (ECF No. 12 at ¶ 11). "These statements suggest, at a minimum, [] there is a genuine dispute as to whether the prosecutors' decision to voluntarily dismiss the charges against [Plaintiff] was indicative of his innocence or show that his conviction was improbable." *Jones*, 959 F.3d at 765. Furthermore, the State has not since brought new charges against Plaintiff nor has any new evidence been discovered. *Id*. "These facts only reinforce [the] conclusion [] [Plaintiff] has met his burden, at the summary judgment stage, to show a genuine issue as to whether the proceedings against him terminated in his favor." *Id*.

Second, relevant specifically to Plaintiff's state law malicious prosecution claim, "[m]alice may be inferred from the absence of probable cause." *Stillwagon*, 274 F.Supp.3d at 778; *Anderson v. Eyman*, 180 Ohio App.3d 794, 2009-Ohio-102, ¶ 40, 907 N.E.2d 730, 777–78 (holding that for purposes of a malicious prosecution claim, "malice" is "an improper purpose, or any purpose other than the legitimate interest in bringing an offender to justice"). Given this Court's determination that there exists a genuine issue of material fact as to the existence of probable cause, there can similarly be no conclusive finding on the existence of malice.

Ultimately, given the foregoing issues of material fact, Defendant Officers' motion for summary judgment on Plaintiff's federal and state law malicious prosecution claims is **DENIED**.

c. State Law Immunity

Lastly, this Court briefly discusses the City of Columbus's claim it is immune from liability on Plaintiff's state law malicious prosecution claim. Defendants argue the City is immune from liability pursuant to O.R.C. 2744. (*Id*. at 18–20). Specifically, Defendants assert that because the City is a political subdivision and the behavior about which Plaintiff complains was the conduct of City employees/agents, they are entitled to presumptive tort immunity for any injury, death, or loss to person or property. (*Id*. at 18 (citing O.R.C. 2744.02(A))). Furthermore, they maintain that because the conduct about which Plaintiff complains was connected with a governmental function—the provision of police services—and none of the exceptions in O.R.C. 2744.02(B) apply, the City is immune from liability. (*Id*.).

Plaintiff concedes the City does not have liability under the doctrine of *respondeat superior* for his state law malicious prosecution claim. (*Id*.). However, Plaintiff represents liability can exist for violations of federal law pursuant to R.C. 2744.09(E). (*Id*.). Accordingly, Plaintiff moves for leave to file an amendment to his complaint to include an allegation the City is liable for the Officers' violations of §1983 by virtue of being the Officers' employers. (*Id*. (citing *Meekins v. City of Oberlin*, 8th Dist. Cuyahoga App. No.106060, 2018-Ohio-1308, ¶ 21)).

After conceding this point in response to Defendants' Motion, Plaintiff moved to amend his Complaint. (*Id*.). That Motion, however, was denied by the Magistrate Judge. (*See* ECF No. 72 (finding Plaintiff had not shown sufficient good cause to be granted leave to amend, and nonetheless, his proposed amendment is futile)). Given this disposition, the City of Columbus' motion for summary judgment on Plaintiff's state law malicious prosecution claim is **GRANTED**. As this is the only claim asserted against it, the City is hereby **DISMISSED** as a Defendant.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Exclude Officer Cornute (ECF No. 40) and Defendants' Motion to Exclude Jim Shively (ECF No. 67) are **DENIED** and given that disposition, Plaintiff's Motion for Leave to File Sur-reply (ECF No. 78) is **DENIED as moot**. Further, Defendants' Motion to Strike or for Leave to File Sur-reply (ECF No. 81) is **DENIED**, while Plaintiff's Motion Supplement the Record (ECF No. 73) is **GRANTED**. Finally, Plaintiff's Motion for Partial Summary Judgment (ECF No. 57) is **DENIED**, while Defendants' Motion for Summary Judgment (ECF No. 58) is **GRANTED in part and DENIED in part**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATE D: February 1, 2022**