## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **TERRY SCOTT CASKEY,** | : | |
| | : | **Case No. 2:20-cv-1549** |
| **Plaintiff,** | : | |
| | : | **Chief Judge Algenon L. Marbley** |
| **v.** | : | |
| | : | **Magistrate Judge Kimberly A. Jolson** |
| **NATHAN FENTON,** *et al.,* | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

This matter is before this Court on the parties' cross Motions in Limine. (ECF Nos. 120; 133) and Plaintiff's Motion for Jury View (ECF No. 111). For the following reasons, Plaintiff's Motion in Limine is **GRANTED in part, DENIED in part** (ECF No. 120), Defendants' Motion in Limine is **GRANTED in part, DENIED in part, and HELD IN ABEYANCE in part** (ECF No. 133), and Plaintiff's Motion for Jury View is **DENIED**. (ECF No. 111).

## I.    BACKGROUND

On the evening of November 11, 2018, Defendant Officers Fenton and Harshbarger were patrolling Columbus' 8th precinct. (ECF No. 55-1 at 4). Officer Harshbarger was driving, and Officer Fenton was in the passenger seat. (*Id.*). Around 7:15pm, Defendants observed a blue 2009 Nissan Altima, license plate HDU2365, stopping ahead at the intersection of Dana and Union Ave with only one working brake light. (ECF No. 12, ¶ 6 (citing ECF No. 57-1 at 2–3)). After the driver turned "quickly" westbound on Union Ave without signaling, the Officers "initiated their lights and audible siren . . . [to] conduct a traffic stop for the traffic violations" of Columbus City Code ("C.C.C.") § 2131.14, Failing to Signal, and C.C.C. § 2137.24, Motor Vehicle Lights. (*Id.*).

1

The Officers reported the vehicle then turned "northbound onto S. Central Ave and []
quickly accelerate[d] into the furthest left-hand lane of vehicles traveling southbound on S. Central
Ave. in order to flee . . . ." (*Id.*). Defendant Officers contend this act "caused a substantial risk of
physical harm to anyone traveling southbound on S. Central Ave. and to property in the furthest
left-hand lane . . . ."[1] (*Id.*). As the vehicle turned southbound, the Officers represent they were able
to identify the driver as "an older male, white, short hair and medium build." (*Id.*). The vehicle
then took off "northbound in the southbound lane of travel until it reached the intersection of
Sullivan Ave. and S. Central Ave." (*Id.* at 2–3). At this point, the Officers ended their pursuit. (*Id.*).
They then watched the Nissan turn southbound onto the ramp of 70 East, and "estimated . . . [it]
was traveling was around 90[mph] in a 55mph zone" in heavy traffic. (*Id.*).

The Officers then looked up the license plate and found it was registered to Plaintiff, Terry
Caskey. (*Id.*). The Officers looked up Plaintiff's photograph on the Ohio Law Enforcement
Gateway ("OHLEG") and determined he was the same "older male, white, short hair and medium
build they witnessed driving." (*Id.* at 3). Based on this alleged identification, "the Officers felt they
had probable cause to believe Plaintiff was the driver of the vehicle that was fleeing from their
audible and visible signals to pull over and creating a substantial risk of physical harm to persons
or property." (ECF No. 58 at 6). Defendant Fenton submitted a police report requesting the
Franklin County Prosecutor's Office indict Plaintiff for violating Ohio Rev. Code § 2921.331,
Failure to Comply with the Order or Signal. (ECF No. 57-1 at 3).

The Country Prosecutor presented Officer Fenton's report to a grand jury, where a
Columbus Police Department liaison was called to testify. (ECF No. 58 at 7 (citing ECF No. 56-1

---

[1] Plaintiff takes issue with this representation, arguing that "when cross-examined nearly a year ago about this
supposedly hazardous situation, Officer Fenton admitted—because the dashcam video makes it obvious—there was
no southbound traffic on Central Avenue." (See ECF No. 61 at 3 (citing ECF No. 55-1 at 4)).

at 3)). Neither Defendant testified before the grand jury. (*Id.*). On November 21, 2018, the grand jury indicted Plaintiff for violating O.R.C. § 2921.331 and the County Prosecutor requested the issuance of a warrant for Plaintiff's arrest. (ECF No. 56-1 at 4). Plaintiff was arrested outside his residence on November 22, 2018 (ECF. No. 42-1 at 4) and was released on his own recognizance on November 27, 2018 (ECF No. 58-5). Thereafter, on December 17, 2018, Plaintiff entered a not guilty plea. (*See* ECF No. 58-6). On April 24, 2019, the case was dismissed due to "insufficient evidence to prove identification." (ECF No. 58-7; ECF No. 42-1 at 7).

Plaintiff represents "[t]he actual driver of the Nissan on the night in question was Robert Taliaferro, who later admitted" as such. (ECF No. 12, ¶ 11). His "admission was captured on video by [Plaintiff] after he was released on bail . . . [and] was then given to the prosecuting attorney's office." (*Id.*). This disclosure, says Plaintiff, is the true reason his case was dismissed. (ECF No. 57 at 8). Defendants, meanwhile, maintain the dismissal of Plaintiff's case "does not indicate Mr. Taliaferro, or any other person, was the actual person who committed the crime, it only states there was insufficient evidence to prove" Plaintiff was the driver.[2] (ECF No. 58 at 7).

During discovery, the parties filed a series of motions: (1) Plaintiff sought to exclude Defendants' rebuttal expert Officer David Cornute (ECF No. 40); (2) Defendants moved to exclude the testimony and photographs of Jim Shively (ECF No. 67); and (3) in August 2021, the Plaintiff brought a Motion for Partial Summary Judgment (ECF No. 57) and Defendants filed a Motion for Summary Judgment (ECF No. 58). On February 1, 2022, this Court issued an Opinion & Order ruling that the Motions to exclude the testimony of Officer David Cornute and Plaintiff's expert Jim Shively were denied (ECF Nos. 40; 67). This Court denied Plaintiff's Motion for Partial

---

[2] Defendants further represent that "[t]he prosecutor on the case never spoke to Defendant Officers regarding their ability to identify the driver of the vehicle or discuss[ed] the matter at all prior to or after dismissing the case." (ECF No. 58 at 8).

Summary Judgment regarding the Fourth Amendment seizure without probable clause claim and malicious prosecution claim as there remained a genuine question of material fact as to whether the officers would have been able to see the driver on the night in question. (ECF No. 85 at 23, 25). This Court also rejected Defendants' Motion for Summary Judgment that Defendant Harshbarger was not involved in the identification of the driver, that intervening acts by the county prosecutor exempts Defendant Officers from liability for the malicious prosecution charge, and that the officers would have definitively been able to see the driver of the vehicle. (*Id.* at 22–23, 25). Further, it concluded that Defendants were not entitled to qualified immunity but dismissed the City of Columbus on the state malicious prosecution claim. (*Id.* at 15–18, 30).

Defendant officers appealed the decision, but the Sixth Circuit affirmed this Court's ruling. (ECF No. 97). Therefore, this matter is ready for trial and two claims brought under 42 U.S.C. § 1983 remain: (1) false arrest; and (2) malicious prosecution. (ECF No. 120 at 3).

## II.    STANDARD OF REVIEW

### A.  Motions in Limine

The purpose of a motion *in limine* is "to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999). "It is well established that "[w]hether or not to grant a motion in limine falls within the sound discretion of the trial court." *Delay v. Rosenthal Collins Grp., LLC*, No. 2:07-cv-568, 2012 WL 5878873, at *2 (S.D. Ohio Nov. 21, 2012) (citing *Branham v. Thomas M. Cooley Law Sch.*, 689 F.3d 558, 562 (6th Cir. 2012)). The guiding principle is "to ensure evenhanded and expeditious management of trials." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).

Courts should "exclude evidence on a motion *in limine* only when that evidence is determined to be clearly inadmissible on all potential grounds." *Delay*, 2012 WL 5878873, at *2.

4

Thus, "[w]hen a court is unable to determine whether or not certain evidence is clearly inadmissible, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in the proper context." *Id.* Orders *in limine* which exclude broad categories of evidence should seldom be employed. The better practice is to deal with questions of admissibility as they arise. *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *see also Morrison v. Stephenson*, No. 2:06-cv-283, 2008 WL 343176, at *1 (S.D. Ohio Feb. 5, 2008) ("Courts ... are generally reluctant to grant broad exclusions of evidence *in limine*, because a court is almost always better situated during the actual trial to assess the value and utility of evidence."). "Whether or not to grant a motion *in limine* falls within the sound discretion of the trial court." *Delay*, 2012 WL 5878873, at *2. Additionally, "[a] ruling on a motion in limine is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983)). Thus, this Court "may change its ruling at trial for whatever reasons it deems appropriate." *Id.*

## B. Applicable Rules of Evidence

Evidence that is not relevant is not admissible. Fed. R. Evid. 402. Evidence is relevant, and therefore generally admissible, so long as it "has any tendency to make a fact more or less probable," and so long as "the fact is of consequence in determining the action." Fed. R. Evid. 401. It is well established that "[t]he standard for relevancy is 'extremely liberal' under the Federal Rules of Evidence." *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009) (internal citation omitted). "[A] piece of evidence does not need to carry a party's evidentiary burden in order to be relevant." *Id.* at 401. Additionally, evidence can be relevant even if it does not relate to a fact in dispute, provided the evidence supplies background information about a party or issue. *See* Fed.

R. Evid. 401 Advisory Committee's Notes ("Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding."). Assuming evidence is relevant, Rule 403 nonetheless grants trial courts discretion to exclude that evidence "if its probative value is substantially outweighed" by the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Sixth Circuit has consistently held that the level of unfair prejudice necessary to exclude otherwise relevant evidence is a high bar and must be the type of evidence to "suggest a decision made on an improper basis." *United States v. Johnson*, 581 F. 3d 320, 327 (6th Cir. 2009).

Hearsay is any "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Back v. Nestle USA, Inc.*, 694 F.3d 571, 577 n. 1 (6th Cir. 2012) (quoting *United States v. Rodriguez-Lopez*, 565 F.3d 312, 314 (6th Cir. 2009)). Generally, hearsay is inadmissible, unless an exception to the hearsay rule applies. Fed. R. Evid. 801, 802.

Federal Rule of Evidence 702, which governs the testimony of expert witnesses, reads:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

District courts may admit proposed expert testimony only if it satisfies three requirements. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008) (citing Fed. R. Evid. 702 advisory committee's notes to 2000 amendments) (describing the district courts' responsibility "of

acting as gatekeepers to exclude unreliable expert testimony"); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

First, "the witness must be qualified by 'knowledge, skill, experience, training, or education.'" *Id.* at 529 (quoting FED. R. EVID. 702). The Sixth Circuit "take[s] a liberal view of what 'knowledge, skill, experience, or training' is sufficient to satisfy [this] requirement." *Bradley v. Ameristep, Inc.*, 800 F.3d 205, 209 (6th Cir. 2005) (citing *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000)). A witness's qualifications are not measured "in the abstract," but rather by determining "whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994).

Second, the proposed testimony "must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *In re Scrap Metal*, 527 F.3d at 529 (quoting FED. R. EVID. 702). The testimony must "fit" the issue to be resolved at trial. *Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999). An expert is not permitted, however, to testify as to the "ultimate issue" in a trial. *Berry*, 25 F.3d at 1354 ("We would not allow a fingerprint expert . . . to opine that a defendant was guilty (a legal conclusion)," but would permit him to testify "that the defendant's fingerprint was the only one on the murder weapon (a fact).")

Third, "the testimony must be reliable." *In re Scrap Metal*, 527 F.3d at 529; *see also Daubert*, 509 U.S. at 589 ("[U]nder the [Federal] Rules [of Evidence] the trial judge must ensure that any and all . . . testimony or evidence admitted is not only relevant, but reliable."). The reliability requirement focuses on the methodology and principles underlying the testimony. *Greenwell*, 184 F.3d at 496–97. The Supreme Court has extended the factors for evaluating the reliability of expert testimony, first set forth in *Daubert*—that is, testing, peer review, error rates, and acceptance in the relevant scientific or technical community. *See Kumho Tire*, 526 U.S. at

141–42. The test of reliability, however, is "flexible" and the *Daubert* factors are "neither necessarily nor exclusively appli[cable] to all experts or in every case." *Id.* at 142. Ultimately, a district court is tasked not with assessing whether the expert's opinion is "correct, but rather to determine whether it rests upon a reliable foundation." *Little Hocking Water Ass'n, Inc., v. E.I. du Pont de Nemours & Co.*, 90 F.Supp.3d 746, 752 (S.D. Ohio 2015). And finally, where the proposed expert testimony is in dispute, "it is more appropriate for a judge to admit the evidence than to keep it from the fact-finder." *Id.* at 752 (explaining that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction of the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence" (quoting *Daubert*, 509 U.S. at 596) (alteration in original)).

With respect to all three elements listed above, the proponent of the testimony must establish admissibility by a preponderance of the evidence. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n.10).

### III.    LAW & ANALYSIS

### A.  Plaintiff's Motions in Limine

#### 1.  *Plaintiff's Motions One, Four, and Five*

Plaintiff's first Motion seeks to prohibit Defendants from offering any evidence which contradicts or questions that Plaintiff's underlying criminal charge was terminated in his favor or that he allegedly paid court costs. (ECF No. 120 at 1–3). Defendants have stipulated that Mr. Caskey's case was terminated favorably. (ECF No. 127).

Next, Plaintiff argues that Defendants should be barred from offering evidence that "their eyesight [is] enhanced when they encounter potential danger." (ECF No. 120 at 11). Defendants do not object and will not present any evidence of this argument at trial. (ECF No. 136 at 5).

Finally, Plaintiff seeks to prohibit Defendants from arguing that they "had probable cause because they were forced to make a split-second judgment in circumstances that were tense, uncertain and rapidly evolving." (ECF No. 120 at 12). Plaintiff alleges that Defendants cite inapplicable use of force caselaw to weaken the probable cause objective reasonableness standard where conditions for identifying a suspect were less than ideal. (*Id.* at 14–15). Therefore, Plaintiff argues that Defendants should also be prohibited from suggesting that a less-than positive identification suffices for a probable cause determination. (*Id.* at 16). Defendants do not object to this Motion, and state that they do not intend to make this argument at trial. (ECF No. 136 at 5).

Therefore, Plaintiff's Motions with respect to these three issues are **GRANTED**.

### 2. *Motion Two: Causation of the Arrest and Prosecution*

Plaintiff's second Motion seeks an to prohibit Defendants from submitting evidence or eliciting testimony arguing or inferring that Defendants did not cause the Plaintiff to be arrested and prosecuted as it relates to the malicious prosecution claim. (ECF No. 120 at 3). Plaintiff maintains that the Sixth Circuit's decision regarding Defendants' appeal of summary judgment found that Defendants proximately caused Plaintiff to be indicted and arrested, and any argument that the prosecutor obtained the indictment and arrest warrant would confuse the jury. (*Id.* (citing ECF No. 97 at 13–14 (taking the facts as presented by Caskey, the officers offered false information, "which formed the entire basis for the grand jury indictment, thereby creating an unbroken chain of causation between their misrepresentations and Caskey's arrest."))). Plaintiff acknowledges that the question of whether the Defendants' police report was false and probable cause existed remains for the jury to decide but argues that the question of proximate cause is already answered. (*Id.* at 5).

Conversely, Defendants argue that the Sixth Circuit's ruling was made in the context of summary judgment, which required the Court to draw inferences in favor of Plaintiff—a requirement to which a jury is not limited. (ECF No. 136 at 2). According to Defendants, the question of whether the chain of causation was broken in malicious prosecution and wrongful arrest cases rests on whether "the officers knowingly, deliberately, or recklessly made false statements necessary to establish probable cause for an arrest." (*Id.*). Because Defendants contest making any false statement, Defendants argue that the issue of causation is still seriously disputed and must be reserved for the jury. (*Id.* at 2–3).

Here, Plaintiff argues that Defendants should be excluded from introducing any evidence that questions whether Defendants were the proximate cause of the malicious prosecution claim, not the direct cause of the claim. The two cases cited by the Sixth Circuit in the opinion addressing the appeal of this case demonstrate that whether the requirements of proximate cause are met is a case-specific, fact-intensive inquiry. (*See* ECF No. 97 at 13–15 (citing *Sykes v. Anderson*, 625 F.3d 294, 317 (6th Cir. 2010)(where a police officer makes a false or misleading statement, he "may be liable for consequences caused by reasonably foreseeable intervening forces") and (*Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir. 2006)("Police officers cannot, in good faith, rely on a judicial determination of probable cause [to] absolve them of liability when that determination was premised on an officer's own material misrepresentations to the court.")). While these cases acknowledge that police officers cannot escape liability just because of their position, whether the officer is ultimately found liable for malicious prosecution is a question reserved for the jury. (*Id.* at 13 (citing *Higazy v. Templeton*, 505 F.3d 161, 177 (2d Cir. 2007) (concluding that where an officer makes false or misleading statements, the officer may be liable for consequences caused by reasonably foreseeable intervening forces))). In *Sykes*, the Sixth Circuit said this analysis

10

required consideration of the totality of the circumstances, but that a reasonable jury could conclude that an officer's false testimony was the proximate cause of malicious prosecution where they provided contradictory testimony, or their false representations were directly relied upon in the proceedings. 625 F.3d at 315–16. As this is a fact specific determination, and this specific issue was not decided on summary judgment, Plaintiff's motion must be denied.

Further, an appellate court reviews *de novo* a district court's denial of a defendant's motion for summary judgment on qualified immunity grounds. *Rafferty v. Trumbull County, Ohio*, 915 F.3d 1087, 1093 (6th Cir. 2019). The Sixth Circuit has a limited role in reviewing this Court's decision because it could only disagree with this Court's finding that a factual dispute remains for trial where "plaintiff's version of events is so blatantly contradicted by the record . . . that no reasonable jury could have believed her." (ECF No. 97 at 7 (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)). The fact that the Sixth Circuit acknowledged that Defendants could be held liable for malicious prosecution stemmed from the assumptions in favor of Plaintiff's allegations that Defendants acted wrongfully, not a definitive statement of the law. Therefore, this matter is not settled. Because courts should "exclude evidence on a motion *in limine* only when that evidence is determined to be clearly inadmissible on all potential grounds . . . [w]hen a court is unable to determine whether or not certain evidence is clearly inadmissible, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in the proper context." *Delay*, 2012 WL 5878873, at *2. Therefore, Plaintiff's Motion as it pertains to causation of arrest and prosecution is **DENIED**.

### 3. *Motion Three: Testimony of Officer Cornute*

Plaintiff's third Motion seeks to exclude testimony from Officer David Cornute that there was "enough illumination" and "brightness levels reaching the person driving the Nissan Altima"

for the officers to make "a positive identification." (ECF No. 120 at 7 (quoting ECF No. 41)). Plaintiff argues that Officer Cornute admitted in his deposition that his conclusions about the presence of sufficient illumination on the night in question is based on believing the Defendants' version of events and not based on his experience as a police officer. (*Id.* at 7–9). Plaintiff maintains that Officer Cornute never read the police report, interviewed Defendants, read Defendants depositions, attempted to recreate the scene at the location, or viewed the full dash-cam footage such that he could make an independent assessment of the Defendants' story. (*Id.* at 9). Therefore, Plaintiff maintains that he cannot testify to this factor based on his experience. (*Id.*).

Conversely, Defendants argue that this Court already found Officer Cornute's testimony resulted from the reliable application of his experience to the facts of this case. (ECF No. 136 at 3 (citing ECF No. 85 at 10)). Defendants allege that this is a second attempt by Plaintiff to prohibit Officer Cornute from refuting Mr. Sobek's conclusion that Defendants did not have sufficient light to identify positively the driver of the Nissan Altima. (*Id.*). Defendants assert that the deposition testimony on which Plaintiff bases his argument were situations in which Plaintiff's Counsel asked for Officer Cornute's scientific opinion and where he could not apply his own experience. (*Id.* at 4). Therefore, because Plaintiff challenges the reliability of this evidence, Defendants maintain it is more appropriate to admit the evidence which can be better challenged at trial. (*Id.*).

Plaintiff previously sought to exclude Officer Cornute's testimony, but this Court denied that Motion, reasoning that Officer Cornute reliably applied his significant experience as a police officer to rebut Mr. Sobek's testimony. (ECF No. 85 at 10). This Court further concluded that Officer Cornute offered reliable testimony regarding the "alleged insufficiency of Mr. Sobek's recreation of the night in question; specifically, why using a different vehicle yields unreliable results." (*Id.*). The same logic applies at this stage of the litigation. Officer Cornute is a non-

12

scientific expert opinion witness, and he can rely on his experience as a police officer and accident investigator to draw his own conclusions about the visibility on the night in question. Whether the information Officer Cornute relied upon or the process by which he reached his conclusions is reliable or flawed is a matter for the jury to decide. Further, Plaintiff fails to cite to any Federal Rule of Evidence to argue that this evidence is inadmissible. As previously stated, where the reliability of evidence is in dispute, it is more appropriate for a judge to admit the evidence than keep it from the factfinder because "["[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Therefore, Plaintiff's Motion as it pertains to this evidence is **DENIED**.

#### 4. Motion Six: Claims of Mistaken Belief are Not Probable Cause

Plaintiff's sixth Motion alleges that Defendants initially represented they clearly and unequivocally observed Mr. Caskey driving the vehicle and were able to make a positive identification—giving them probable cause to file a police report seeking arrest and prosecution. (ECF No. 120 at 17). Since that time, however, Plaintiff argues that Defendants have pursued an alternative subjective probable cause argument that "Defendant officers observed or *believed they observed Plaintiff* in the driver's seat of the Nissan Altima." (*Id.* at 18 (citing ECF No. 75 at 4)). Plaintiff alleges that Defendants really argue that if they did not really see Mr. Caskey, they still had probable cause because "they believed" they saw Mr. Caskey driving. (*Id.*).

Defendants counter that: (1) this argument meets the legal requirements of probable cause which is "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion," (*See* ECF No. 136 at 6 (quoting *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993)); and (2) Plaintiff mistakenly asserts that the question of whether Mr. Caskey was the

driver is dispositive of Defendants' liability. (*Id.* at 5). They reason that probable cause does not require the Defendants to be correct, but only that they had reasonable grounds to believe Mr. Caskey was the driver. (*Id.* at 6).

"'Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. McClain,* 444 F.3d 556, 562 (6th Cir. 2005) (quoting *United States v. Ferguson,* 8 F.3d 385, 392 (6th Cir. 1993) (en banc)). This Court considers the totality of the circumstances and whether the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing . . . that the suspect has committed . . . an offense." *Barrera v. City of Mount Pleasant*, 12 F.4th 617, 620 (6th Cir. 2021) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). In the context of an arrest challenged for a lack of probable cause, the question is whether a reasonable police officer in the same circumstances and with the same knowledge *could* have *reasonably believed* that probable cause existed. *Davis v. Walleman*, 596 F.Supp.3d 877, 887 (E.D. Mich. 2022) (citing *Carmichael v. Vill. of Palatine, Ill.*, 605 F.3d 451, 459 (7th Cir. 2010), *Fowler v. Burns*, 447 Fed. App'x 659, 661 (6th Cir. 2011)) (emphasis added). Therefore, "an objective, not a subjective standard applies." *Barrera*, 12 F.4th at 620.

Plaintiff fails to cite any caselaw to support his argument. Whether Defendants "observed or *believed they observed Plaintiff*" in the driver's seat falls firmly within the probable cause definition, as the jury must assess whether a reasonable police officer in the same circumstances and with the same knowledge as Defendants *could* have reasonably believed that probable cause existed that Mr. Caskey was in fact the driver. *Davis*, 596 F.Supp.3d at 887. This analysis turns not on whether Defendants personally believed they saw Mr. Caskey, but whether a *reasonable police officer* with the same facts *could believe* Mr. Caskey was the driver. While this Court

14

acknowledges that the line between objective and subjective can appear blurred in the context of probable cause, the difference between objective and subjective reasonableness here is not about the word "belief" but instead about the specific Defendants' subjective belief versus a reasonable police officer's objective belief. It is the jury who must decide whether the facts available to Defendants were sufficient for a reasonable police officer, to believe that they saw Mr. Caskey. Further, the distinction Plaintiff seeks can and will be addressed in the jury instructions.

Whether Defendants have changed their testimony from affirmatively observing Plaintiff to "believing" they observed Plaintiff is a matter which can be addressed through impeachment at trial and is not appropriate for this stage of the litigation. Therefore, Plaintiff's Motion as it pertains to this issue is **DENIED**.

### 5. Innuendo Concerning Caskey

In its Response in Opposition to Defendant's Motion in Limine (ECF No. 134), Plaintiff argues that Defendants should be barred from offering any evidence "by way of innuendo about Mr. Caskey's sexuality." (*Id.* at 2). Plaintiff and Mr. Taliaferro lived together, and Plaintiff is concerned that it may appear to some jurors that they were in a romantic relationship when they were simply roommates. (*Id.*).

First, this Motion is not properly before this Court, as it was raised for the first time in response to Defendant's Motion. *Curcio Webb LLC v. National Benefit Programs Agency, Inc*, 367 F. Supp. 2d 1191, 1207 (S.D. Ohio 2005); *see also Lower Town Project, LLC v. Lawyers Title Ins. Corp.*, 2012 WL 628523, at *3 (E.D. Mich. Feb. 17, 2012) (rejecting an argument raised for the first time in response to a motion in limine); *cf. Shelby Cnty. Health Care Corp. v. Majestic Star Casino,* 581 F.3d 355, 372 n. 7 (6th Cir. 2009) ("[A]rguments not raised before the district court, including arguments presented for the first time to a district court in a reply brief, generally

are considered waived on appeal....”). Second, absent evidence to the contrary, which is not before this Court, evidence of Mr. Caskey's sexuality appears to lack any relevance to this proceeding. Fed. R. Evid. 401. Therefore, this Court will not entertain this argument at trial. Given the timeliness of this argument, however, Plaintiff's Motion as to this issue is **DENIED**.

### B. Defendants' Motions in Limine

#### 1. Defendants' Motions A, C, and D

Defendants argue that Plaintiff has waived his right to assert damages for compensation for lost pay, lost paid-time-off, and for attorneys' fees in his related criminal trial because Plaintiff failed to provide a computation of these damages through discovery. (ECF No. 133 at 3–4). Plaintiff states that he will not be offering evidence that relates to economic loss or attorneys' fees associated with the underlying criminal case. (ECF No. 134 at 1).

Defendants argue that Plaintiff should be precluded from presenting any evidence of any other alleged misconduct of the Defendants outside this case. (ECF No. 133 at 6). Defendants maintain that the information is immaterial, confusing, unduly prejudicial, and does not relate to this case. (*Id.*). Plaintiff states that he will not offer any evidence that relates to misconduct, disciplinary actions, complaints, investigations, lawsuits, or other actions regarding Defendants. (ECF No. 134 at 1).

Defendants argue that Plaintiff should be precluded from presenting any evidence of the City of Columbus' alleged misconduct connected to suit because it was dismissed as a defendant following summary judgment. (ECF No. 133 at 7). Plaintiff does not intend to offer any evidence related to its previous claim against the City of Columbus. (ECF No. 120 at 1).

Therefore, Defendants' Motions with respect to these issues are **GRANTED**.

### 2. Motion B: Statements and Video of Bob Taliaferro

Mr. Caskey intends to present four videos that he "took surreptitiously in which Bob Taliaferro admits he was driving the Altima on the night in question." (ECF No. 134 at 2). Defendants argue that the video and statements by Mr. Taliaferro allegedly confessing that he was the driver of the vehicle the night in question are inadmissible hearsay pursuant to Federal Rule of Evidence 801(a) and no hearsay exception applies. (ECF No. 133 at 5–6). Plaintiff counters that the videos are not offered to prove solely the truth of the matter asserted—that Mr. Taliaferro was driving the Altima, not Mr. Caskey—but to demonstrate to the jury the efforts Mr. Caskey took to prove he was not the driver. (ECF No. 134 at 3). It should be noted that Mr. Taliaferro does not appear on Plaintiff's witness list.

While Plaintiff alleges that he does not seek to admit Mr. Taliaferro's video statements solely for the purpose of demonstrating that Mr. Caskey was the driver of the vehicle, he admits that it is one of the purposes. Mr. Taliaferro's statements in the videos, however, are hearsay because they are out of court statements partially asserted to demonstrate that Mr. Caskey was not the driver of the vehicle on the night in question. Therefore, they are inadmissible absent an exception.

Federal Rule of Evidence 804(b)(3) provides an exception to the hearsay bar for statements that "a reasonable person in the declarant's position would have made only if the person believed it to be true," or exposed the declarant to criminal or civil liability. Mr. Taliaferro's statements in the video implying that he was the driver and fled from the police fit squarely within this definition. These statements, however, can only be admitted where the declarant—here Mr. Taliaferro—is unavailable. Fed. R. Evid. 804(b). At issue here, however, is that Plaintiff alleges that Mr. Taliaferro's whereabouts are unknown. (ECF No. 57 at 8). A declarant is only considered

17

unavailable where the declarant is "absent from the hearing and [the] proponent of a statement has been unable to procure the declarant's . . . attendance or testimony . . . by process or other reasonable means." Fed. R. Evid. 804(a)(5). While Plaintiff states that Mr. Taliaferro is unavailable, there is no evidence in the record that demonstrates Plaintiff has made efforts to locate him or motion this Court to subpoena Mr. Taliaferro. *See Lucas v. Chance*, 121 Fed. App'x 77, 80 (6th Cir. 2005) (finding that a declarant was *not* unavailable where proponent of statement provided no evidence to procure the declarant's testimony for fear that witness would be hostile). While the validity of these statements does not directly resolve the claims, they are highly relevant given who the police identified in the vehicle is disputed.

Because this Court is unable to determine whether this evidence is clearly inadmissible, this Court defers its ruling as to Mr. Taliaferro's video and statements until trial so that Plaintiff can present evidence of Mr. Taliaferro's unavailability and Defendants are offered an opportunity to respond. This Motion is **HELD IN ABEYANCE.**

### 3. Motion E: Testimony of James Sobek and Jim Shively

#### a. James Sobek

Defendants argue that Plaintiff's expert James Sobek's testimony should be excluded as unhelpful, inaccurate, and unnecessarily prejudicial. (ECF No. 133 at 11). Mr. Sobek is an expert witness who concluded that the illumination levels on the night in question were insufficient for Defendants to observe and identify the driver of the Nissan Altima. (*Id.* at 7). Defendants argue, however, that the conditions under which Mr. Sobek made his conclusions were very different from those present on the evening of the event at issue—namely: (1) the chase took place on a clear night and Mr. Sobek's recreation occurred during a foggy day; (2) he reconstructed the scene from the driver's seat of a MINI Cooper, not the police van which Defendants allege sits about

two feet higher off the ground; and (3) Mr. Sobek relied on a photo of the police vehicle that lacked the light-bar, spotlights, and grille lights present on the vehicle driven by Defendants on the night in question. (*Id.* at 9–10). Because Defendants allege that Mr. Sobek's testimony is based on incorrect information, they argue it is irrelevant and should not be admitted. (*Id.* at 10). To the extent Plaintiff argues that Mr. Sobek's conclusions are supported by the dash cam video, Defendants assert that the video will be viewable to the jury which can make its own conclusions absent Mr. Sobek's testimony. (*Id.*).

Conversely, Plaintiff argues that Mr. Sobek provides an explanation for each of Defendants' concerns regarding his recreation of the event in question. (ECF No. 134 6–8). First, Plaintiff responds that Mr. Sobek's report identified all of the sources of light captured by the video, and specifically detailed that there was no indication of a spotlight from the police vehicle trained on the car. (*Id.* at 7). Second, Plaintiff argues that the fact that Mr. Sobek completed his study during the day, despite the fog, means there was more light during the recreation than that available to Defendants on the night in question. (*Id.* at 8). Finally, Plaintiff cite Mr. Sobek's report for the conclusion that the increased height of the officers in the police van would have made it harder to see the driver looking down from above than Mr. Sobek's position in a MINI Cooper. (*Id.* at 8).

As detailed *supra*: (1) an expert witness must "be qualified by 'knowledge, skill, experience, training, or education,'" *see* FED. R. EVID. 702; (2) the proposed testimony "must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue,'" s*ee In re Scrap Metal*, 527 F.3d at 529 (quoting FED. R. EVID. 702); and (3) "the testimony must be reliable." *In re Scrap Metal*, 527 F.3d at 529.

Mr. Sobek is undoubtably qualified to testify as an expert witness due to his training in accident reconstruction, degree in physics, and twenty-year career in the United States Navy developing guided missile systems and electro-optic guidance systems. (ECF No. 42-2 at 7:1–18). Therefore, he meets the requirement of prong one of the expert witness test. Next, this Court previously held that Mr. Sobek's conclusion were significant, and therefore relevant to this matter meeting the requirements of prong two. (ECF No. 85 at 21).

Defendants appear only to challenge the third requirement, arguing that Mr. Sobek's methodology is unreliable and will only serve to confuse the jury. (ECF No. 133 at 8 (citing Fed. R. Evid. 702(3)). The requirement that an expert's testimony be reliable means that it must be "supported by appropriate validation—i.e., 'good grounds,' based on what is known." *Daubert,* 509 U.S. at 590. "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *Stuckey v. Online Res. Corp.,* No. 2:08–CV–1188, 2012 WL 1808943, at *4 (S.D. Ohio May 17, 2012) (Marbley, J) (citing *In re Scrap Metal,* 527 F.3d at 529–30). Either Mr. Sobek's report or Plaintiff's argument directly addresses all of Defendants' concerns regarding the reliability of Mr. Sobek's methodology. Defendants' concern goes not to admissibility but to the weight of the evidence. Because where the reliability of the evidence is in dispute, it is more appropriate for a judge to admit the evidence than to keep it from the factfinder, *see Daubert,* 509 U.S. at 596, Defendants' Motion as it pertains to the admissibility of Mr. Sobek's testimony is **DENIED**.

### b.  Jim Shively

Next, Defendants challenge photos taken by lay witness Jim Shively that are intended to depict the scene of the incident. (ECF No. 133 at 11). Defendants seek to limit Mr. Jim Shively's

testimony to the jury to "foundational questions" necessary to admit the photos into evidence. (*Id.*). Further, they ask this Court to exclude from evidence Mr. Shively's affidavit which contains opinions about the range and limitations of human eyesight. (*Id.* at 12). Defendants argue that such testimony requires a showing of expertise, which Mr. Shively's lay witness status does not allow. Plaintiff responds that Mr. Shively's affidavit will not be offered as evidence, and he intends only to elicit information necessary to lay the foundation for the photographs and any of Mr. Shively's personal observations while taking the photographs.

Plaintiff's response to Defendants' Motion regarding Mr. Shively seeks to ask questions beyond just the foundational ones necessary to admit the photos into evidence—namely, questions about his personal observations while taking the photos. A lay witness's testimony, however, is admissible where it is rationally based on that witness's perception, helpful to determining a fact at issue, and "not based on scientific, technical, or other specialized knowledge." *Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, 380 F.Supp.3d 692, 697 (N.D. Ohio 2019) (citing Fed. R. Evid. 701). Questions regarding his observations while taking the photos are related to his personal experience, helpful to determining the conditions under which the incident occurred, and not based on any specialized knowledge. Fed. R. Evid. 401, 701. Therefore, this evidence is appropriately elicited from a lay witness, and there is no evidence raised by the Defendants that Mr. Shively's personal observations are prejudicial to their case.

Therefore, Defendants' Motion is **GRANTED in part** as it relates to excluding Mr. Shively's affidavit but **DENIED in part** because Plaintiff is permitted to ask both foundational questions and those about Mr. Shively's personal observations while taking the photos. Should Plaintiff elicit testimony that veers into expert testimony territory, this Court will consider objections on those grounds if raised at trial.

### C.  Jury View

Plaintiff moves this Court for permission to conduct a jury view of the Franklin County Jail on Front Street in Columbus to assist the jury in understanding the testimonial evidence they will receive at trial. (ECF No. 111 at 1). Specifically, Plaintiff alleges that he was in a twelve-man cell and does not believe that testimony can properly relay the "cramped quarters, lack of privacy, noise and even smells" he experienced during his five days of incarceration. (*Id.*). Defendants counter that a jury view is a waste of time and resources and sufficient evidence of the facts of the case will be presented to the jury through photographs and Plaintiff's testimony. (ECF No. 112 at 1–2). Because mistreatment during his period of incarceration has not been alleged by Plaintiff and Defendants are not employees of Franklin County, Defendants argue that a jury view would not provide any additional evidence not already available to the jury. (*Id.* at 2). Finally, Defendants allege that in 2023, Franklin County began utilizing a newly constructed jail on Fisher Road, and the Front Street location would no longer be reflective of Plaintiff's experience. (*Id.*).

In his reply, Plaintiff acknowledges that since filing the Motion for the Jury View, Plaintiff learned that the Front Street Jail was closed in March 2023. (ECF No. 113 at 1). Plaintiff requests that the jury still be permitted to view the Jackson Pike Jail where Mr. Caskey was held for the last three days of his five-day confinement. (*Id.*). Plaintiff reiterates that the purpose of the jury view is not to demonstrate mistreatment, but for the jury to understand the alleged deprivation Mr. Caskey experienced while held following his arrest. (*Id.* at 2).

When assessing whether a jury view is appropriate, courts generally consider such factors as "the importance of the information to be gained by the view to the issues in the case, changed conditions, practicality, and whether the same information has been secured from maps, photos or diagrams and testimony from witnesses." 2 McCormick on Evidence § 219 (6th ed. 2006). At best,

a jury view of the Jackson Pike facility would only provide the jury with an understanding of a portion of Mr. Caskey's period of confinement. Plaintiff has stated in a conclusory fashion that the deprivation Mr. Caskey experienced cannot be comprehended through testimony alone. Yet, Plaintiff provides no evidence explaining why photos or diagrams, in addition to Mr. Caskey's testimony, cannot be presented to the jury to demonstrate the alleged deprivation. *See Johnson v. Baker*, No. 1:08-cv-038, 2009 WL 3486000, at *8 (W.D. Ky. Oct. 23, 2009) (denying a motion for jury view of the jail in which plaintiff prisoner was assaulted because plaintiff failed to explain why the same information could not be presented to the jury through demonstrative evidence).

Finally, Federal Rule of Evidence 403 allows this Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." A jury view is not practical, wastes time, and presents cumulative evidence to the jury that could otherwise be presented through demonstrative evidence. While Mr. Caskey has indicated that he will cover the cost of transporting the jury, Plaintiff states that the jury view would take up to one and a half hours given the farther distance of the Jackson Pike facility. Pursuant to Federal Rule of Evidence 403, this Court finds that a jury view is minimally probative and is substantially outweighed by the delay it would cause and Plaintiff's ability to present similarly probative evidence in court with demonstrative evidence. Therefore, Plaintiff's Motion for a Jury View is **DENIED**. (ECF No. 111).

## IV.    CONCLUSION

For the reasons stated *supra*, Plaintiff's Motion in Limine is **GRANTED in part, DENIED in part** (ECF No. 120), Defendants' Motion in Limine is **GRANTED in part, DENIED in part,**

**and HELD IN ABEYANCE in part** (ECF No. 133), and Plaintiff's Motion for Jury View is **DENIED**. (ECF No. 111).

      **IT IS SO ORDERED.**

                            **ALGENON L. MARBLEY**
                            **CHIEF UNITED STATE DISTRICT JUDGE**

**DATED: July 12, 2023**