IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TERRY SCOTT CASKEY**,

        Plaintiff,

  v.                           Case No. C2-20-cv-1549
                               Chief Judge Algenon L. Marbley
**NATHAN FENTON, et al.,**       Magistrate Judge Jolson

        Defendants.

**PLAINTIFF SCOTT CASKEY'S MOTION FOR AWARD
OF ATTORNEY FEES, AND OTHER COSTS**

Plaintiff moves the Court for an order awarding Plaintiff and his counsel attorney fees and other costs incurred herein, as more fully set forth in the attached memorandum. This motion is made pursuant to 42 U.S.C.§1988, and S. D. Ohio Civ. Rules 54.1 and 54.2

**MEMORANDUM IN SUPPORT**

**A.  The Applicable Legal Standards**

The Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C.§1988(b), provides in relevant part:

> In any action or proceeding to enforce a provision of section [ ] . . . 1983 . . . of this title . . . the court, in its discretion, may allow the prevailing party. . . a reasonable attorney's fee as part of the costs . . .

In *Hensley v Eckerhart*, 461 U.S. 424 (1983), the Supreme Court established that in fee-shifting cases the basis of a fee award is the "lodestar" - - the number of hours reasonably expended multiplied by the applicable hourly market rate for legal services. Id, at 433.  See also *Gisbrecht v. Barnhart*, 535 U.S. 789, 802 (2002) ("Thus, the

1

lodestar method today holds sway in federal court adjudication of disputes over the amount of fees properly shifted to the loser in the litigation.").

The reasonable rate is determined by reference to the marketplace. *See, eg., Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) ("we have consistently looked to the marketplace as our guide to what is reasonable."). In *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984), the Supreme Court explained that the prevailing market rate takes into account the skill and experience of the attorneys, and noted that the reasonable rate for established, experienced practitioners is likely to be greater than the rate for new attorneys in the same market:

> To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence - - in addition to the attorneys' own affidavits - - that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  A rate determined in this way is normally deemed to be reasonable and is referred to . . . as the prevailing market rate.

Where the party seeking the attorney fees has established that the number of hours and the rate claimed are reasonable, the lodestar is presumed to be the reasonable fee to which counsel is entitled. *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 552 (6th Cir. 2008) (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986)).  See also, *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (the lodestar is strongly presumed to yield a reasonable fee).

In assessing the number of hours worked, the Sixth Circuit has warned against micro-analysis and second-guessing the litigation strategy of the attorneys for the prevailing party:

> The question is not whether a party prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to

obtain the relief achieved. Rather, the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed. *Woolridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990).

The grant of a request for attorney fees is left to the sound discretion of the district court. *Imwalle*, 513 F.3d at 551 (citing *Singleton v. Smith*, 241 F.3d 534, 538 (6th Cir. 2001)). The Sixth Circuit instructs:

> The trial court's exercise of discretion is entitled to substantial deference because the rationale for the award is predominately fact-driven. *Wilson-Simmons v. Lake County Sheriff's Dept.*, 207 F.3d 818, 823 (6th Cir. 2000). This deference "is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

In determining a reasonable attorney's fee, courts are not to reduce the lodestar fee simply because a prevailing plaintiff did not succeed on every claim they asserted. Where the claims are related, the plaintiff is entitled to the full lodestar fee. When successful and unsuccessful claims are all related, the hours expended on the litigation are all compensable. As the Supreme Court explained in *Hensley*, 461 U.S. at 435:

> When a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended in the litigation. . . In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. . . . Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

The Sixth Circuit has applied this principle consistently, describing it this way:

> {S]uccessful and unsuccessful claims are deemed related when they "involve a common core of facts", are "based on related legal theories", or when counsel's time is "devoted generally to the litigation as a whole, making it difficult to divide the hours expended." *Hensley*, 461 .U.S. at 433. . .

3

*Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005) (affirming district court's finding that successful employment discrimination claims and unsuccessful claims were related). The district court may focus on the plaintiff's overall success where the claims are related and not examine the plaintiff's success on a claim-by-claim basis. *DiLaura v. Twp. of Ann Arbor*, 471 F.3d 666, 673 (6th Cir. 2007). When a party wins her case on only one of her four claims, she is still entitled to receive 100% of the fee award "in light of the overall relief obtained." *Phelan v. Bell*, 8 F.3d 369 (6th Cir. 1993).

Time spent for litigating the fee issue should also be included in the award. See *Weisenberger v. Huecker*, 593 F.2d 49 (6th Cir. 1979).

## B. FACTS AND ARGUMENT

Mr. Caskey's counsel should be awarded the fees requested. The hours expended by each attorney were recorded contemporaneously with the work and are accurate. The hours worked and the tasks performed were reasonably believed by Plaintiff's counsel to be important in pursuit of a successful outcome for the Plaintiff. Counsel did not engage in any unnecessary duplication of effort and took steps to avoid it. The number of hours requested is entirely reasonable in light of the path this litigation took. It was largely decisions and choices made by the Defendants which determined the number of hours of work performed by Plaintiff's attorneys.

The hourly rates requested are reasonable, and in line with the prevailing market rates for attorneys of similar skill and experience. All of the Plaintiff's claims were related to the same common set of facts. And finally, the litigation was successful, and Mr. Caskey obtained excellent results. The following specific circumstances further support the requested fees.

## 1. Mr. D'Aurora's Decision to Accept This Case

After Mr. Caskey's criminal charges were dismissed, he was interested in obtaining legal advice regarding a civil suit against the officers. He was referred to Mr. D'Aurora by another lawyer who knew Mr. D'Aurora's skill and experience in litigating civil cases in state court. Mr. Caskey asked Mr. D'Aurora to represent him.

Although his experience primarily involved litigating business-related disputes, Mr. D'Aurora felt that what had been done to Caskey was wrong and he agreed to handle the case. In doing so, he took the very real risk of not collecting any fee after hundreds of hours of hard work. Trying a civil rights case alleging a desire for damages against law enforcement officers, in a federal court which requires a unanimous verdict, is a very difficult task. In this instance the challenge was compounded by the fact that Mr. D'Aurora had not previously litigated a civil rights case. Nevertheless, he accepted that challenge and chose to take the risk.

This is exactly how 42 U.S.C.§1988 was designed to work when it was passed by Congress. The fee-shifting provision is intended to assist civil rights plaintiffs to obtain meaningful access to counsel and an opportunity to vindicate their constitutional rights. *See Hensley*, 461 U.S. at 429 (recognizing that the purpose of §1988 is to ensure effective access to the judicial process for individuals with civil rights grievances) (citing H.R. Rep. No. 94-1558, p.1 (1976)).

The award of the requested fees of counsel herein, therefore, has a much broader significance. Indeed, it is important to current and potential civil rights lawyers in general. For those who choose to take on the risk (including decreased time they

have to spend on other matters) and ultimately prevail, full and fair compensation must follow.

### 2.  Efforts by Plaintiff's Counsel to Avoid All Unnecessary Duplication

This case has been litigated for 3 ½ years now.  For 2 ½ of those years, Mr. D'Aurora was the only attorney of record for Mr. Caskey.  He made contact with Mr. McNamara and consulted with him at a few crucial stages, in order to obtain the thoughts of a civil rights specialist.  Otherwise, Mr. D'Aurora handled all of the witness identification and preparation, documents discovery, depositions, and work on the dispositive motions phase.  He handled the development of expert witness acquisition and reporting.  When the Defendants filed an interlocutory appeal, Mr. D'Aurora handled all aspects of the appeal process. By successfully navigating each of these phases of the case by himself, without co-counsel, he avoided the possibility of any unnecessary duplication of effort.  Only when the Sixth Circuit affirmed on appeal, and the case was now coming back for trial, did the trial attorney seek co-counsel.

### 3.  Choices by the Defendants Dictated the Number Of Hours Worked by Plaintiff's Counsel

Since the City of Columbus has the statutory duty under Ohio law to indemnify the officers if a verdict is rendered against them, it was the City that would make decisions regarding the course of the litigation, including how to approach the question of settlement.  And, on the day this case was filed, the City already knew a great deal about the incident in question.

They knew that the prosecution of Mr. Caskey had been abandoned by the County Prosecutor due to insufficient evidence regarding identification of the driver. They knew that the officers' cruiser-camera video did not confirm their claim that Mr.

6

Caskey was seen driving. They also knew that Mr. Caskey had a surreptitiously recorded video in which his former roommate made statements confessing to the crime for which Casey had been charged.

In the face of this evidence, the City made the decision that they would not settle the case. An initial Mediation Conference was set in this Court in 2020, and a mediator was appointed. The Defendants wrote to Plaintiff on December 2,2020, indicating they would make no offer, ending any further negotiations. Of course, the defense had the right to approach the litigation in this way. Our only point is that, due to these choices made by the Defendants, Plaintiff's counsel was required to do more work.

The litigation went forward then for more than a year, during which time discovery continued, experts were identified and deposed, and various motions were filed including dispositive motions. On February 1, 2022, this Court ruled on all of the pending motions. As part of that Order, the Court denied the Defendants' efforts to exclude Plaintiff's expert and denied the Defendants' Motion for Summary Judgment. The Court specifically found the existence of factual disputes sufficient to preclude summary judgment, and clearly established law sufficient to preclude the application of qualified immunity.

The Court also entered an Order setting the trial date in April, 2022, and scheduling a Settlement Conference on February 17, 2022. This would have been a good time for serious efforts to resolve the case. Mr. Caskey had been deposed. Both Defendant officers had been deposed and had filed affidavits in support of their motions (these were the same affidavits and transcripts used to cross-examine the officers at the trial in 2023.).

However, before the scheduled mediation occurred, the defense made the choice to file an interlocutory appeal to the Sixth Circuit. Their decision led to ten (10) months of additional work for Plaintiff's counsel in the appellate court. The Court of Appeals explored the possibility of a settlement conference prior to briefing, but the Defendants again declined. So the case was fully briefed, and the parties prepared for and gave oral argument in Cincinnati.

On November 16, 2022, the Sixth Circuit affirmed the district court's denial of summary judgment for Officers Fenton and Harshbarger on all of Mr. Caskey's claims. It was at this point, with no further impediments to trial and no chance of settlement, that Mr. D'Aurora requested and obtained the participation of co-counsel, Mr. McNamara.

Even after the case returned to this Court, the defense made additional choices in the litigation which forced Plaintiff's attorneys to increase their hours herein. For example, the Defendants attempted to schedule depositions of Mr. Caskey's damage witnesses just months before trial, and years after the discovery deadline had passed. When Plaintiff's counsel did not concede to these depositions the defense pressed the issue, requiring the Magistrate Judge to intervene. Plaintiff's counsel was required to research and prepare our response, and these belated depositions were ultimately not permitted.

Another example was the issue of "favorable termination" of Mr. Caskey's prosecution. The Plaintiff proposed a stipulation on this element of Mr. Caskey's malicious prosecution claim, but the Defendants declined to stipulate. This decision forced Plaintiff's attorneys to prepare and file a motion *in limine* on the issue.

8

By far the most significant decision made by the defense was their choice not to enter into settlement negotiations in the final months before trial.  This decision led to literally hundreds of additional hours of work by Mr. Caskey's attorneys.  On June 8, 2023 the Court held a meeting in an attempt to resolve the case before trial. At that conference, Plaintiff and his counsel came fully prepared to make sizeable compromises in the hope of reaching an agreement. The Defendants advised that they would offer $20,000 in total, and that figure was not negotiable.  As a practical matter, this offer was the equivalent of zero, since Mr. Caskey's litigation costs and other expenses already exceeded $20,000.00, meaning that neither the Plaintiff nor his attorneys would receive damages or fees.

Again, the Defendants had every right to adopt whatever strategy they wished, and our point is not to criticize.  The defense was gambling on their hope that they would prevail at trial.  But their decisions contained risks.  One of those risks was that the Plaintiff would prevail, and then the Plaintiff's attorney fees would be much greater, they would be responsible for Plaintiff's costs, and they would be responsible for the amount of the verdict. Since the Defendants, not Mr. Caskey or his lawyers, chose the path leading to a five-day trial, they cannot now be heard to complain about the number of hours the Plaintiff's counsel worked to achieve the successful outcome they did at that trial.

### C.  The Fees and Costs Requested and The Evidence in Support

For the reasons stated herein, and in the attached Affidavits, Plaintiff requests an award of attorney fees and costs as follows:

(1) Attorney fees for Jack D'Aurora (including paralegal time, as listed), in the amount of One Hundred Eighty Four Thousand Two Hundred Forty One and 84/100 Dollars ($184,241.84), representing 468.20 hours at $375.00 per hour, through the date of this motion;

(2) Attorney fees for James D. McNamara in the amount of Two Hundred Thirty Two Thousand Five Hundred Fifty Dollars ($232,550.00) representing 465.1 hours at $500.00 per hour, through the date of this motion; and

(3) Costs in the amount of Thirteen Thousand Six Hundred Thirty Seven and 86/100 dollars ($13,637.86), as described in the Affidavit of Jack D'Aurora, and attached Bill of Costs.

These requested attorney fees and costs are supported by the Affidavits of Mr. D'Aurora and Mr. McNamara, as well as Affidavits from Frederick M. Gittes, John S. Marshall, Bryan L. Jeffries, and Brigid E. Heid, attached hereto.

Respectfully submitted,

*/s/ Jack D'Aurora*
Jack D'Aurora          (0056020)
The Behal Law Group
501 S. High Street, Suite 200
Columbus, Ohio 43215
(614) 643-2109
jdaurora@behallaw.com
Trial Attorney for Plaintiff

*/s/ James D. McNamara*
James D. McNamara    (0002461)
88 E. Broad Street, Suite 1350
Columbus, OH 43215
(614) 464-2770
psilbach@yahoo.com
Co-counsel for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served upon all counsel of record by operation of the United States District Court ECF Filing system, this 29th day of September, 2023..

*/s/ James D. McNamara*
James D. McNamara  (0002461)