IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TERRY SCOTT CASKEY, | : |
| | : |
| **Plaintiff,** | : |
| | : Case No. 2:20-cv-1549 |
| v. | : |
| | : Chief Judge Marbley |
| NATHAN FENTON, *et al.*, | : |
| | : Magistrate Judge Kimberly A. Jolson |
| | : |
| **Defendants.** | : |

**OPINION & ORDER**

This matter is before this Court on Plaintiff's Motions for Award of Attorneys' Fees and for Prejudgment Interest. (ECF Nos. 167, 168). Defendants filed a response (ECF No. 169) to which Plaintiff replied. (ECF No. 170). After reviewing these filings and for the reasons set forth, this Court **GRANTS** Plaintiff's motions in full.

**I.    BACKGROUND**

On the evening of November 11, 2018, Defendant Officers Fenton and Harshbarger were patrolling Columbus' 8th precinct. (ECF No. 55-1 at 4). Officer Harshbarger was driving, and Officer Fenton was in the passenger seat. (*Id.*). Around 7:15pm, Defendants observed a blue 2009 Nissan Altima, license plate HDU2365, stopping ahead at the intersection of Dana and Union Ave with only one working brake light. (ECF No. 12, ¶ 6 (citing ECF No. 57-1 at 2–3)). After the driver turned "quickly" westbound on Union Ave without signaling, the Officers "initiated their lights and audible siren . . . [to] conduct a traffic stop for the traffic violations" of Columbus City Code ("C.C.C.") § 2131.14, Failing to Signal, and C.C.C. § 2137.24, Motor Vehicle Lights. (*Id.*).

The Officers reported the vehicle then turned "northbound onto S. Central Ave and [] quickly accelerate[d] into the furthest left-hand lane of vehicles traveling southbound on S. Central

Ave. in order to flee . . . ." (*Id.*). Defendant Officers contend this act "caused a substantial risk of physical harm to anyone traveling southbound on S. Central Ave. and to property in the furthest left-hand lane . . . ." (*Id.*). As the vehicle turned southbound, the Officers represent they were able to identify the driver as "an older male, white, short hair and medium build." (*Id.*). The vehicle then took off "northbound in the southbound lane of travel until it reached the intersection of Sullivan Ave. and S. Central Ave." (Id. at 2–3). At this point, the Officers ended their pursuit. (*Id.*). They then watched the Nissan turn southbound onto the ramp of 70 East, and "estimated . . . [it] was traveling was around 90[mph] in a 55mph zone" in heavy traffic. (*Id.*).

The Officers then looked up the license plate and found it was registered to Plaintiff, Terry Caskey. (*Id.*). The Officers looked up Plaintiff's photograph on the Ohio Law Enforcement Gateway ("OHLEG") and determined he was the same "older male, white, short hair and medium build they witnessed driving." (*Id*. at 3). Based on this alleged identification, "the Officers felt they had probable cause to believe Plaintiff was the driver of the vehicle that was fleeing from their audible and visible signals to pull over and creating a substantial risk of physical harm to persons or property." (ECF No. 58 at 6). Defendant Fenton submitted a police report requesting the Franklin County Prosecutor's Office indict Plaintiff for violating Ohio Rev. Code § 2921.331, Failure to Comply with the Order or Signal. (ECF No. 57-1 at 3). The Country Prosecutor presented Officer Fenton's report to a grand jury, where a Columbus Police Department liaison was called to testify. (ECF No. 58 at 7 (citing ECF No. 56-1 at 3)). Neither Defendant testified before the grand jury. (*Id.*). On November 21, 2018, the grand jury indicted Plaintiff for violating O.R.C. § 2921.331 and the County Prosecutor requested the issuance of a warrant for Plaintiff's arrest. (ECF No. 56-1 at 4). Plaintiff was arrested outside his residence on November 22, 2018 (ECF. No. 42-1 at 4) and was released on his own recognizance on November 27, 2018 (ECF No.

2

58-5). Thereafter, on December 17, 2018, Plaintiff entered a not guilty plea. (See ECF No. 58-6). On April 24, 2019, the case was dismissed due to "insufficient evidence to prove identification." (ECF No. 58-7; ECF No. 42-1 at 7).

Plaintiff represents "[t]he actual driver of the Nissan on the night in question was Robert Taliaferro, who later admitted" as such. (ECF No. 12, ¶ 11). His "admission was captured on video by [Plaintiff] after he was released on bail . . . [and] was then given to the prosecuting attorney's office." (*Id*.). This disclosure, says Plaintiff, is the true reason his case was dismissed. (ECF No. 57 at 8). Defendants, meanwhile, maintain the dismissal of Plaintiff's case "does not indicate Mr. Taliaferro, or any other person, was the actual person who committed the crime, it only states there was insufficient evidence to prove" Plaintiff was the driver. (ECF No. 58 at 7).

During discovery, the parties filed a series of motions: (1) Plaintiff sought to exclude Defendants' rebuttal expert Officer David Cornute (ECF No. 40); (2) Defendants moved to exclude the testimony and photographs of Jim Shively (ECF No. 67); and (3) in August 2021, the Plaintiff brought a Motion for Partial Summary Judgment (ECF No. 57) and Defendants filed a Motion for Summary Judgment (ECF No. 58). On February 1, 2022, this Court issued an Opinion & Order ruling that the Motions to exclude the testimony of Officer David Cornute and Plaintiff's expert Jim Shively were denied (ECF Nos. 40; 67). This Court denied Plaintiff's Motion for Partial Summary Judgment regarding the Fourth Amendment seizure without probable clause claim and malicious prosecution claim as there remained a genuine question of material fact as to whether the officers would have been able to see the driver on the night in question. (ECF No. 85 at 23, 25). This Court also rejected Defendants' Motion for Summary Judgment that Defendant Harshbarger was not involved in the identification of the driver, that intervening acts by the county prosecutor exempts Defendant Officers from liability for the malicious prosecution charge, and

3

that the officers would have definitively been able to see the driver of the vehicle. (*Id*. at 22–23, 25). Further, it concluded that Defendants were not entitled to qualified immunity but dismissed the City of Columbus on the state malicious prosecution claim. (*Id*. at 15–18, 30).

Defendant officers appealed the decision, but the Sixth Circuit affirmed this Court's ruling. (ECF No. 97). The matter then went to trial for the remaining two claims brought under 42 U.S.C. § 1983: (1) false arrest; and (2) malicious prosecution. (ECF No. 120 at 3). At the conclusion of the trial, the jury rendered a verdict for Plaintiff on the unlawful arrest claim. (ECF No. 160). Throughout this case, Plaintiff asserts that Defendants refused to settle in good faith and made several decisions that prolonged the case's lifespan. (ECF. No. 167 at 7-9). While Defendants have not taken issue with Plaintiff's request for attorneys' fees, they take aim at Plaintiff's assertion that they did not settle in good faith and are therefore entitled to prejudgment interest. (ECF No. 169). This Court turns to analyze each respective request for fees.

## II. STANDARD OF REVIEW

### A. Attorneys' Fees

The Civil Rights Attorney's Fees Award Act of 1976 states, in relevant part: "In any action or proceeding to enforce a provision of section []… 1983… of this title… the court, in its discretion, may allow the prevailing party… a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). To determine a basis for reasonable attorney's fees, courts have used the "lodestar" method. *See Hensley v. Eckerhart*, 461 U.S. 424 (1983); *see also Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002) ("[t]he 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.") (citing *Burlington v. Dague*, 505 U.S. 557, 562 (1992)). The lodestar method requires a court to multiply the number of hours reasonably expended by the applicable hourly market rate for legal services to find an objective basis for a lawyer's services. *Hensley*, 461 U.S. at 433. When looking at the prevailing market rate, courts also take into account

4

the skill, experience, and reputation of the attorney. *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984). The burden is on the fee applicant to produce satisfactory evidence to show that the requested rates are in line with the prevailing market rate. *Id*.

In requesting attorney's fees, a prevailing plaintiff does not need to succeed on every claim asserted to be entitled to the full lodestar amount. *Barnes v. City of Cincinnati*, 401 F.3d 729. 745 (6th Cir. 2005) (citing *Hensley*, 461 U.S. at 433). The claims must only be "related," meaning "they 'involve a common core of facts,' are 'based on related legal theories,' or when counsel's time is 'devoted generally to the litigation as a whole, making it difficult to divide the hours expended.'" *Id.* In other words, the lodestar amount should not be reduced simply because a plaintiff did not succeed on every contention raised in a lawsuit. *Hensley*, 461 U.S. at 435.

### B. Prejudgment Interest

Plaintiff brings his prejudgment interest claim pursuant to Ohio law. (ECF No. 168). Ohio law permits prejudgment interest pursuant to Ohio Rev. Code § 1343.03(C), which states in relevant part:

> If, upon motion of any party to a civil action that is based on tortious conduct, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, decree, or order for the payment of money, the court determines at a hearing held subsequent to the verdict or decision in the action that *the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case*, interest on the judgment, decree, or order shall be computed as follows:
>
> (ii) From the date on which the party to whom the money is to be paid filed the pleading on which the judgment, decree, or order was based to the date on which the judgment, decree, or order was rendered.

§ O.R.C. 1343.03(C) (emphasis added). As explained by a fellow court in this district, an award of prejudgment interest pursuant to Ohio common law "does not constitute a special proceeding like moving for prejudgment interest pursuant to Ohio Rev. Code § 1343.03(C)." *Gorsha v. Clark*, No. 2:18-CV-508, 2022 WL 278973, at *10 (S.D. Ohio Jan. 31, 2022) (citing *Moskovitz v. Mt.*

5

*Sinai Med. Ctr.*, 69 Ohio St.3d 638, 657, 635 N.E.2d 331, 347 (1994)).

The test to determine a failure of good faith to settle is set forth in *Stallworth v. City of Cleveland*:

> A party has not "failed to make a good faith effort to settle" under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party.

893 F.2d 830, 835 (6th Cir. 1990). It is within a trial court's discretion to determine the good faith of the parties' settlement efforts when deciding to award prejudgment interest. *Id.*; *Hines v. DeWitt*, 2016 U.S. Dist. LEXIS 59344 at *28-29.

### III. LAW & ANALYSIS

#### A. Attorneys' Fees

This Court calculates an award of attorney's fees under the lodestar method, which multiplies the reasonable hourly rate by the number of hours reasonably expended on the litigation. *Lee v. Javitch, Block & Rathbone, LLP*, 568 F. Supp. 2d 870, 875 (S.D. Ohio 2008). As an objective test, "there is a strong presumption that the lodestar figure is reasonable." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010) (internal quotations omitted). The reasonable hourly rate should be determined according to the "prevailing market rate[s] in the relevant community." *Blum*, 465 U.S. at 895. The reasonable number of hours does not include "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. The lodestar method is meant to attract competent counsel while not serving as a windfall for attorneys. *Coulter v. Tenn.*, 805 F.2d 146, 149 (6th Cir. 1986), abrogated on other grounds by *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 692 (6th Cir. 2016).

The first test is whether Plaintiff's attorneys' fees were charged at a reasonable hourly rate. Here, Plaintiff has requested $416,791.84 in attorneys' fees along with $13,637.86 in court costs.

(ECF No. 167 at 10). In support of this request, Plaintiff has submitted the appropriate affidavits and evidence that shows the work provided at a reasonable rate. (*Id.*). Specifically, in Mr. D'Aurora's affidavit, he attests that his usual billable rate of $300 per hour was raised to $375 in this case due to his unfamiliarity with civil rights cases, as his expertise is in litigating business-related disputes. (*Id.* at 13). Furthermore, Mr. McNamara attests that he regularly handles civil rights cases, and that his billable rate is $500 per hour which is in line with other attorneys in this area with similar skill, experience, and expertise. (*Id.* at 81-83). Despite Mr. D'Aurora's unfamiliarity with civil rights cases, he still obtained successful results for his client. His hourly rate of $375 is reasonable for the work performed, especially comparing it to Mr. McNamara's $500 rate who regularly practices in this field of law. Given the evidence presented and lack of dispute by Defendant, both attorneys' rates are deemed reasonable by this Court.

This Court next turns to whether a reasonable number of hours were expended. This case was litigated for three and a half years. During this time, Plaintiff's attorneys billed hundreds of hours for the work they performed. Specifically, Mr. D'Aurora billed 468.20 hours while Mr. McNamara billed 465.10 hours. (*Id.* at 10). Considering that this case was complex, contested, and concluded with a jury trial, the amount of work expended was reasonable in Plaintiff's pursuit of success. Defendants do not object or challenge Plaintiff's lodestar calculations. In light of this, this Court finds that Plaintiff's request for fees and costs is reasonable and appropriate. For these reasons, this Court **GRANTS** Plaintiff's motion for attorneys' fees and other costs for a total of **$430,429.70**.

B.  Prejudgment Interest

The parties in this matter dispute whether prejudgment interest should be awarded. Courts turn to the familiar *Stallworth* test to decide on issues concerning prejudgment interest. The *Stallworth* test for prejudgment interest contains four parts: if a party has: (1) fully cooperated in

7

discovery proceedings; (2) rationally evaluated his risks and potential liability; (3) not attempted unnecessarily to delay any of the proceedings; and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party, then that party has not "failed to make a good faith effort to settle." *Stallworth*, 893 F.2d at 835.

### 1. Full Cooperation in Discovery

Here, Plaintiff argues that Defendants fulfilled their duties under element (1) in that they complied with all discovery proceedings. (ECF No. 168 at 2). Defendants agree, noting that they cooperated with all discovery deadlines and depositions. (ECF No. 169 at 1). Accordingly, this element is satisfied.

### 2. Rationally Evaluated Risks and Potential Liability

Plaintiff argues that Defendants failed to meet the standard under element (2) because Defendants "did not rationally evaluate their risks and potential liability." (ECF No. 168 at 2). Plaintiff argues that Defendants did not rationally evaluate their risks and chose the path that led to Plaintiff's attorneys working more hours on this case. (ECF No. 167 at 9). Plaintiff makes clear that he does not mean to criticize Defendant's counsel and that he only seeks to highlight that by ending negotiations in 2020 and refusing to settle the case, Defendants required Plaintiff's counsel to complete more work for this case. (*Id.* at 6). Plaintiff goes on to argue that an opportune time to settle the case arose during the February 2022 settlement conference ahead of the April 2022 trial. (*Id.* at 7). Before the scheduled conference, however, Defendants filed an interlocutory appeal to the Sixth Circuit, triggering an additional ten (10) months of work for Plaintiff's counsel in the appellate court. (*Id.* at 7; *See Caskey v. Fenton*, No. 22-3100, 2022 WL 16964963 (6th Cir. Nov. 16, 2022)). The Circuit Court also considered a settlement conference prior to briefing, but Defendants again declined. (ECF No. 167 at 8). The case was subsequently fully briefed and

argued in Cincinnati before the Sixth Circuit handed down its decision affirming this Court's denial of Defendant's Motion for Summary Judgment. (ECF No. 85). Following that decision and with the trial date fast approaching, this Court held a settlement conference to attempt to resolve the case before trial. Plaintiff argues that he was prepared to negotiate at the conference, but that Defendants offered only a non-negotiable $20,000. (ECF No. 167 at 9). Importantly, Plaintiff's litigation costs and other expenses at that point had already exceeded $20,000, meaning that neither the Plaintiff nor his attorneys would recover damages or fees.

Defendants make no response to Plaintiff's arguments under this element. It is evident from the record that Defendants knew that the county prosecutor had abandoned prosecuting Plaintiff for lack of evidence, that their own cruiser-camera video refuted their story about being able to identify Plaintiff, and that Plaintiff obtained a recorded confession of the crime from his former roommate. (ECF No. 170). Under these facts, Defendants failed to evaluate rationally their risks and potential liability. *Cf. Flynn v. Trumbull Cnty., Ohio*, No. 4:02-cv-773, 2007 WL 789518 (N.D. Ohio Mar. 14, 2007) (finding that Plaintiff satisfied the rational evaluation and potential liability element because the risks weighed in favor of going to trial). Here, Defendants failed to consider the uphill battle they would face at trial considering the above. As such, this element is not met.

### 3. *No Attempt to Unnecessarily Delay*

Plaintiff notes that Defendants fulfilled their duties under element (3) in that they did not attempt unnecessarily to delay any part of the litigation. (ECF No. 168 at 2). Defendants agree, arguing that they never attempted unnecessarily to delay any of the proceedings. (ECF No. 169 at 2). Accordingly, this element is satisfied.

### 4. *Good Faith Monetary Settlement Offer or Response*

Plaintiff argues that Defendants failed to meet the standard under element (4) because

9

Defendants "did not make a good faith monetary settlement offer or respond in good faith to an offer from [Plaintiff]." (ECF No. 168 at 2).

Defendants argue that they made a good faith effort to settle the case. (ECF No. 169 at 3). Defendants argue that, because they attended mediation prior to trial and made a monetary offer to settle, they must be said to have made a good faith effort. (*Id.*). This cannot be said. Defendants attended three mediations but communicated in the first two that they would not settle. (ECF No. 170 at 2). After refusing to settle twice, Defendants offered a non-negotiable $20,000 in the final months leading up to trial – an amount which Plaintiff correctly notes "was the equivalent of zero, since [the] litigation costs and other expenses already exceeded $20,000.00."[1] (ECF No. 167 at 9). Bad faith may indeed arise from an unreasonably low settlement offer from one party. *Paragon Molding, Ltd. v. Safeco Ins. Co.*, No. 3:05-CV-422, 2013 WL 6055403, at *9 (S.D. Ohio Nov. 15, 2013). Here, Defendant's $20,000 offer cannot be said to have been reasonable in the face of Plaintiff's expenses alone. As such, this Court finds that Defendants failed to settle in good faith under the *Stallworth* test set forth above.

Defendants go on to oppose Plaintiff's request for prejudgment interest by arguing that "Plaintiff does not meet his burden under O.R.C. 1343.03(C)."[2] (ECF No. 168 at 2). Specifically,

---

[1] Indeed, the litigation costs and expenses were $430,429.70. *See supra* § III.A.

[2] O.R.C. 1343.03(C)(1) states, in relevant part: "If, upon motion of any party to a civil action that is based on tortious conduct, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, decree, or order for the payment of money, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case, interest on the judgment, decree, or order shall be computed as follows:

(a) In an action in which the party required to pay the money has admitted liability in a pleading, from the date the cause of action accrued to the date on which the order, judgment, or decree was rendered;

(b) In an action in which the party required to pay the money engaged in the conduct resulting in liability with the deliberate purpose of causing harm to the party to whom the money is to be paid, from the date the cause of action accrued to the date on which the order, judgment, or decree was rendered;

(c) In all other actions, for the longer of the following periods:

(i) From the date on which the party to whom the money is to be paid gave the first notice described in division (C)(1)(c)(i) of this section to the date on which the judgment, order, or decree was rendered. The period described in division (C)(1)(c)(i) of this section shall apply only if the party to whom the money is to be paid made a reasonable

Defendants contend that "Plaintiff has offered no evidence that Defendants mediated with a 'dishonest purpose, conscious wrongdoing or ill will in the nature of fraud.'" (*Id.* at 3). Plaintiff is correct to note that this is not the test set forth in *Stallworth*, 893 F.2d at 835. Rather, this Court looks at whether Defendants rationally evaluated their risk and liability, and whether they made a good faith monetary offer to settle. In light of the above analysis, this Court finds that Defendants did not rationally evaluate their risk and liability or make a good faith monetary offer to settle. Accordingly, this Court **GRANTS** Plaintiff's motion for prejudgment interest.

Having found that Plaintiff is entitled to prejudgment interest, the Court must determine the proper amount. *Landis v. Grange Mut. Ins. Co.*, 695 N.E.2d 1140, 1142 (Ohio 1998) (vesting trial courts with the discretion to determine when a judgment became due and payable). Awards of prejudgment interest compensate a beneficiary for the lost interest value of the money that was wrongfully withheld. *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 618 (6th Cir. 1998). The Sixth Circuit has "long recognized that the district court may [award prejudgment interest] at its discretion in accordance with general equitable principles." *Id*. at 616. Ohio's prejudgment calculation method stipulates that interest be paid at the rate per annum determined pursuant to the "federal short-term rate," which is the rate of the average market yield on outstanding marketable obligations of the United States with remaining periods to maturity of three years or less. *See* Ohio Rev. Code § 1343.03. Once the tax commissioner determines this rate, it is rounded to the nearest whole number percent and an additional 3% is added. *Id.* For 2023, the year which the judgment

---

attempt to determine if the party required to pay had insurance coverage for liability for the tortious conduct and gave to the party required to pay and to any identified insurer, as nearly simultaneously as practicable, written notice in person or by certified mail that the cause of action had accrued.
(ii) From the date on which the party to whom the money is to be paid filed the pleading on which the judgment, decree, or order was based to the date on which the judgment, decree, or order was rendered.
(2) No court shall award interest under division (C)(1) of this section on future damages, as defined in section 2323.56 of the Revised Code, that are found by the trier of fact."

in this case was rendered, the interest rate was 5%. Accordingly, the Plaintiff is due prejudgment interest at a rate of 8% (5% plus the statutory 3%) beginning from the date the complaint was filed (March 26, 2020) to the date judgment was rendered (July 21, 2023). Plaintiff's total judgment for attorney's fees and court costs amounts to $430,429.70. Calculating for the almost 40 months during which interest accrued at a rate of 8% per annum yields an interest amount of $114,781.25. Accordingly, the total **judgment is $545,210.95.**[3]

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's motions for attorneys' fees and prejudgment interest (ECF Nos. 167, 168) are **GRANTED**. Defendant is **ORDERED** to pay Plaintiff the total judgment of $545,210.95, consisting of attorney's fees and court costs of $430,429.70 and an interest assessment of $114,781.25.

**IT IS SO ORDERED.**

                                            **ALGENON L. MARBLEY**
                                            **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: June 4, 2024**

---

[3] $430,429.70 * 8% * 40 months / 12 = $114,781.25 in interest. $430,429.70 + $114,781.25 = **$545,210.95.**